STANLEY WATKINS, Plaintiff-Appellant, *v.* EDWARD M. BURKE *et al.,* Defendants-Appellees.

First District (1st Division)   No. 84—327

Opinion filed March 15, 1984.

CAMPBELL, J., specially concurring.

Thomas Johnson, James P. Chapman, Susan Berkowitz, and Alan Mills, all of Chicago, for appellant.

Andrew M. Raucci and Michael Levinson, both of Chicago, for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Stanley Watkins, brought this action to review a decision of the Chicago Board of Election Commissioners striking and dismissing certain objections he had filed with respect to Edward M. Burke's nominating petitions for Democratic ward committeeman. Plaintiff alleged in the proceedings before the board that 382 names appearing on defendant's petitions were *per se* invalid under section 7—10 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 7—10) because the signatures of these voters also appeared on the Republican party candidate's nominating petitions. Section 7—10 prohibits any person from "sign[ing] the petitions for or be[ing] a candidate in the primary of more than one party."

The board rejected plaintiff's argument, finding that section 7—10

only acted to preclude an otherwise qualified person from signing a second nominating petition for the primary of a different party. The board concluded that if the voters in question had signed Burke's nominating petitions for Democratic ward committeeman before signing the Republican nominating petitions, then the signatures on Burke's petitions were valid and the same signatures on the Republican nominating petitions were invalid. If the 382 people subject to plaintiff's objections had signed the petitions in the reverse order, then the signatures on Burke's nominating petitions were invalid and would be striken. Since plaintiff had the burden of demonstrating the invalidity of the 382 signatures and since he failed to present any evidence with respect to the order of signing, his objections were dismissed.

On judicial review of the board's decision, the circuit court affirmed, finding that plaintiff had failed to meet the burden of proof incumbent on him of demonstrating the order of signing of the various petitions. On appeal plaintiff raises the following questions for review: (1) whether or not under section 7—10 of the Election Code voters who sign the nominating petitions of more than one party should have their names stricken from a nominating petition irrespective of the order of signing; and (2) whether or not plaintiff met his burden of demonstrating defendant's circulators filed false affidavits in connection with the nominating petitions because they "knew" the signers of the Burke petition were not "qualified primary electors" of the Democratic party. We affirm the judgment of the trial court.

Section 7—10 of the Election Code provides for a circulator's affidavit in which the circulator is to certify:

"*** that the signatures on that sheet of the petition were signed in his presence, and are genuine and that to the best of his knowledge and belief the persons so signing were *at the time of signing the petitions* qualified voters of the political party for which a nomination is sought." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 46, par. 7—10.)

With respect to those voters signing the nominating petition, section 7—10 goes on to provide:

"but no such person may sign petitions for or be a candidate in the primary of more than one party." Ill. Rev. Stat. 1981, ch. 46, par. 7—10.

In construing these statutory provisions, this court is required to determine and follow the intent of the legislature (*Miceli v. Lavelle* (1983), 114 Ill. App. 3d 311, 448 N.E.2d 989.) The construction urged by plaintiff would automatically curtail the right of an otherwise quali-

fied voter to participate in the primary electoral process by signing a nominating petition if the voter even inadvertently signed the nominating petitions of more than one party. Plaintiff argues that under these circumstances a voter's signature would be *per se* invalid and that the name should be stricken from the nominating petitions of both political parties. We do not believe that this draconian sanction represents the reasoned intent of our legislature, nor does the language of the above cited statute mandate such a drastic result.

■ Accordingly, we hold that where an otherwise qualified voter has signed the nominating petitions of more than one party, the signature appearing on the petition first signed is valid and all subsequent signatures appearing on the nominating petitions of other parties are invalid. We believe this less restrictive construction is consistent with the legislative intent evinced in section 7—10 of the Election Code that a person signing a nominating petition be qualified *at the time of signing* as well as with the laudable public policy of protecting the right of the electorate to participate in the primary electoral process. Thus, section 7—10 will only act to disqualify a voter from signing the nominating petition of a given political party where the voter has previously committed himself to a different political party.

■ From the above holding, it follows that plaintiff was required to show which nominating petition was signed first. The mere appearance of a given voter's signature on both the Democratic and Republican nominating petitions was insufficient for disqualification. While we can appreciate the difficulty of proving the order of signing, difficulty of proof does not shift the burden of proof. (*Shumak v. Shumak* (1975), 30 Ill. App. 3d 188, 332 N.E.2d 177.) Since plaintiff failed to present any evidence on the order of signing, the board correctly dismissed his objections.

■ Similarly, we find little merit in plaintiff's second contention that Burke's circulators filed false affidavits because they allegedly "knew" the signers of the Burke petition were not "qualified primary electors." Nothing in the record indicates that any of the 382 persons mentioned in plaintiff's objections were not qualified voters of the Democratic party at the time of signing Burke's nominating petitions.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON, J., concurs.

JUSTICE CAMPBELL, specially concurring:

While I concur in the results of this case, I do so for reasons different than those adopted by the majority.

The election in which the defendant candidate will appear on the ballot will occur on March 20, 1984. In view of the urgency of this appeal, this case was subject to an expedited briefing schedule and was consolidated for purposes of oral argument only with the case *Fortas v. Dixon* (1984), 122 Ill. App. 3d 697. Both cases presented issues relating to the sufficiency of the nominating petitions submitted for the position of ward committeeman in the city of Chicago. In the present case, the objections to the nominating petitions were overruled and the candidate will remain on the ballot. In the second case, the objections were sustained, causing the candidate to fall short of the required minimum number of signatures and the candidate was not certified to remain on the ballot.

In a third unrelated case, four other candidates for ward committeeman in the city of Chicago successfully argued before the United States District Court for the Northern District of Illinois that the minimum signature requirements for nominating petitions set forth in section 7—10(i) of the Election Code (Ill. Rev. Stat. 1983, ch. 46, par. 7—10(i)) denied them equal protection of the laws and were, therefore, unconstitutional. The Federal district court ordered that the candidates whose nominating petitions contained 5% of the primary electors from their district were to be placed on the ballot for the March 20, 1984, election. (*Smith v. Board of Election Commissioners* (N.D. Ill., 1984), 587 F. Supp. 1136.) For reasons which I will enumerate in my dissent to *Fortas v. Dixon* (1984), 122 Ill. App. 3d 697, I would apply the rationale of the *Smith* decision and affirm the result of this case since the record indicates that regardless of whether or not the challenged signatures are stricken from defendant Burke's petitions, his petitions contain signatures of over 5% of the primary electors from his ward.