Docket No. 109796.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

DANIEL GOODMAN, Appellee, v. CHRIS WARD *et al.*, Appellants.

*Opinion filed March 24, 2011.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

Chief Justice Kilbride took no part in the decision.

## OPINION

At issue in this case is whether a candidate who seeks the office of circuit judge in a judicial subcircuit must be a resident of that subcircuit at the time he or she submits a petition for nomination to the office. By a vote of 2-1, the Will County officers electoral board concluded that residency was not required and that the nominating petition submitted by a nonresident candidate was sufficient to permit the candidate's name to appear on the official ballot for the upcoming primary election. On judicial review, the circuit court of Will County reversed, holding that the name of the nonresident candidate should not appear on the ballot. The appellate court subsequently reached the same conclusion with one justice dissenting. 397 Ill. App. 3d 875. We

granted the nonresident candidate's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). For the reasons that follow, we agree with the circuit and appellate courts that the electoral board erred when it denied the objections to the nonresident's candidacy. The judgment of the appellate court, which affirmed the circuit court's judgment, is therefore affirmed.

## BACKGROUND

The pertinent facts are undisputed. Chris Ward, a United States citizen and licensed attorney-at-law of the State of Illinois, filed a petition with the State Board of Elections (see 10 ILCS 5/7–12 (West 2008)) to have his name appear on the ballot for the February 2010, primary election as a candidate for nomination by the Democratic Party for the office of circuit judge of the 12th Judicial Circuit, 4th Judicial Subcircuit. At the time Ward circulated and filed his petition, he was a resident of the 12th Judicial Circuit, but not of the 4th Subcircuit.

Daniel Goodman, a registered voter in Will County, objected to Ward's candidacy pursuant to section 10–8 of the Election Code (10 ILCS 5/10–8 (West 2008)). See 10 ILCS 5/7–12.1 (West 2008). Goodman is the husband of Carmen Goodman, who was also seeking the nomination of the Democratic Party for the 4th Subcircuit vacancy. In a verified objector's petition he submitted to the Will County officers electoral board, Mr. Goodman asserted that Ward's nominating petitions were insufficient and that Ward's name should not appear on the ballot for the upcoming primary election because Ward did not reside within the boundaries of the 4th Subcircuit and was therefore ineligible for the office to which he sought election.

Two of the three members of the electoral board took the view that candidates for judicial office need not be residents of the political unit from which they seek election at the time they obtain, circulate or file their nominating petitions. Believing that the governing provisions of the Illinois Constitution were "arguably ambiguous and uncertain" and mindful of the precept that ballot access should be favored, the two-member electoral board majority concluded that Ward's nominating papers were sufficient to permit his name to appear on the ballot for the primary election.

-2-

One member of the electoral board took a contrary view. That member interpreted the applicable provisions of the Illinois Constitution, various statutory provisions pertaining to the election and retention of judges, and precedent from this court to mean that candidates for election to circuit court subcircuit positions must meet all eligibility requirements for the office, including residency in the subcircuit, at the time they file their nominating papers.

Because a majority of the electoral board believed that Ward's nominating papers complied with the law, Goodman's objection was denied. Goodman promptly filed a petition for judicial review of the board's decision in the circuit court of Will County. See 10 ILCS 5/10–10.1 (West 2008). Following a hearing, the circuit court concluded that the electoral board's decision was "inconsistent with and contrary to the plain language and obvious meaning" of the provisions of the Illinois Constitution governing eligibility for judicial office. It therefore reversed the electoral board's decision and ruled that Ward's name should not appear on the primary ballot.

Ward appealed unsuccessfully. In an opinion filed prior to the election, the appellate court concluded that the electoral board's interpretation of the governing law was incorrect and that candidates for judicial office must meet the eligibility requirements imposed by the Illinois Constitution, including the residency requirement, in order for their names to be placed on a ballot for election to a judicial post. Because Ward was not a resident of the subcircuit in which he was seeking election as a circuit judge, the appellate court held that the electoral board erred in denying Goodman's objection and allowing Ward's name to remain on the ballot. It therefore ordered that Ward's name be "removed from the official ballot as a candidate for the fourth subcircuit of the Twelfth Judicial Circuit for the Democratic Party at the primary election on February 2, 2010." 397 Ill. App. 3d at 879.

The appellate court's decision was not unanimous. One justice dissented. The dissenting justice disagreed with the majority's analysis and believed that residency in the subcircuit was not required at the time Ward submitted his petitions for the primary election. The dissenting justice would have affirmed the electoral board's decision and allowed Ward's name to remain on the ballot. 397 Ill. App. 3d at 879-82 (Wright, J., dissenting).

Ward petitioned for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26,

2010). While his petition was pending, he moved for expedited consideration of the petition or, in the alternative, for a stay of enforcement of the lower courts' judgments pending consideration of the petition for leave to appeal. Ward's motion was denied, but his petition for leave to appeal was allowed by our court in March of 2010. Following briefing, the cause was set for oral argument at our November 2010 term of court. Goodman subsequently moved to reschedule the oral argument for the January 2011 term of court. Without objection from Ward, Goodman's motion was granted.

During the pendency of this appeal, the election process went forward. The February 2010 primary election was conducted as scheduled. As ordered by the appellate court, Ward's name did not appear on the ballot. His opponent, Carmen Goodman, was left unopposed and won the nomination of the Democratic Party. She subsequently ran against a Republican candidate named Wayne Kwiat in the November 2010 general election. Goodman won that election as well and took office December 6, 2010.

ANALYSIS

Because both the primary and general elections have passed and the vacancy involved in this case has been filled, we consider first whether the case is moot. A case on appeal is normally considered moot "where the issues raised below no longer exist because events subsequent to the filing of the appeal make it impossible for the reviewing court to grant the complaining party effectual relief." *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 423-24 (2010). The parties to this appeal disagree as to how, if at all, a practical remedy could be fashioned in light of the fact that Goodman ultimately prevailed in the general election and has begun her term of office. We need not resolve that question, however, because regardless of whether effectual relief is still possible, the appeal falls within the public interest exception to the mootness doctrine.

The public interest exception permits a court to reach the merits of a case which would otherwise be moot if the question presented is of a public nature, an authoritative resolution of the question is desirable for the purpose of guiding public officers, and the question is likely to recur. *Bonaguro v. County Officers Electoral Board*, 158

Ill. 2d 391, 395 (1994). All three factors are present here. The instant appeal raises a question of election law which, inherently, is a matter of public concern. *Lucas v. Lakin*, 175 Ill. 2d 166, 170 (1997). With the establishment and addition of subcircuits, disputes over residency requirements for subcircuit vacancies are likely to arise in future cases. Moreover, a definitive ruling by this court will unquestionably aid election officials and lower courts in deciding such disputes promptly, avoiding the uncertainty in the electoral process which inevitably results when threshold eligibility questions cannot be fully resolved before voters begin casting their ballots. We will therefore proceed to the merits of the appeal.

In undertaking our analysis, we begin by identifying the specific decision before us and the standards by which it should be judged. As noted earlier in this opinion, Goodman sought judicial review of the electoral board's decision pursuant to section 10–10.1 of the Election Code (10 ILCS 5/10–10.1 (West 2008)), which governs objections to petitions for nomination filed under article 7 of the Election Code (10 ILCS 5/Art. 7 (West 2008)), as Goodman's was (10 ILCS 5/7–12.1 (West 2008)). Such proceedings are in the nature of administrative review. When they reach our court on appeal, it is the election board's decision, not the decision of the circuit or the appellate court, which we review. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008).

As in other administrative review cases, the standard of review we apply to an election board's decision depends on what is in dispute, the facts, the law, or a mixed question of fact and law. *Cinkus*, 228 Ill. 2d at 210. In this case there is no argument about the facts. The issue is whether, given those facts, the Will County officers electoral board correctly concluded that Ward's nominating petitions were sufficient under the controlling law to permit his name to appear on the ballot for the February 2, 2010, primary election as a candidate for the Democratic nomination to fill a subcircuit vacancy.

Our court has held that where the historical facts are admitted or established, the controlling rule of law is undisputed and the issue is whether the facts satisfy the statutory standard, the case presents a mixed question of fact and law for which the standard of review is "clearly erroneous." *Cinkus*, 228 Ill. 2d at 211. We have also held, however, that where the historical facts are admitted or established,

-5-

but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which our review is *de novo*. *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d at 423. The matter before us here falls within the latter category. Our review is therefore *de novo*, a standard we have characterized as " 'independent and not deferential.' " *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d at 423 (quoting *Cinkus*, 228 Ill. 2d at 210).

The procedures by which Chris Ward sought to have his name appear on the ballot for the February 2, 2010, primary election are set forth in article 7 of the Election Code (10 ILCS 5/Art. 7 (West 2008)). Section 7–10 of the Code prohibits the name of a candidate for nomination from appearing on a primary ballot "unless a petition for nomination has been filed in [the candidate's] behalf as provided in *** Article [7]." 10 ILCS 5/7–10 (West 2008). To meet the statute's requirements, a petition for nomination

> "must include as a part thereof, a statement of candidacy for each of the candidates filing, or in whose behalf the petition is filed. This statement shall set out the address of such candidate, the office for which he is a candidate, shall state that the candidate is a qualified voter of the party to which the petition relates and *is qualified for the office specified \*\*\** and shall be subscribed and sworn to by such candidate by some officer authorized to take acknowledgment of deeds in the State \*\*\*." (Emphasis added.) 10 ILCS 5/7–10 (West 2008).

To be "qualified" for judicial office within the meaning of this statute, a person must meet the eligibility requirements set forth in section 11 of article VI of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, §11). Section 11 provides:

> "No person shall be eligible to be a Judge or Associate Judge unless he is a United States citizen, a licensed attorney-at-law of [Illinois], and a resident of the unit which selects him." Ill. Const. 1970, art. VI, §11.

In the case before us, Ward executed a sworn statement of candidacy in which he stated: "I am legally qualified to hold the office of Circuit Court Judge, 12th District [*sic*], 4th Judicial Subcircuit

\*\*\*." He further stated, however, that his address was 1202 Wales Court, Shorewood, Illinois, 60404.

The unit which selects judges in the 4th Judicial Subcircuit of the 12th Judicial Circuit is the 4th Judicial Subcircuit. The boundaries of that subcircuit are defined by section 6 of the Judicial Circuits Apportionment Act of 2005 (705 ILCS 22/6 (West 2008)). There is no dispute that 1202 Wales Court, Shorewood, Illinois, 60404, is not located within those boundaries. Correspondingly, the parties agree that at the time he submitted his petition for nomination, Ward was not, in fact, a resident of the 12th Circuit's 4th Judicial Subcircuit.

As grounds for his objection to Ward's nomination petition, Daniel Goodman argued that because Ward's address was not within the boundaries of the 4th Subcircuit and Ward was therefore not a resident of the subcircuit, the assertion in his sworn statement of candidacy that he was "legally qualified to hold the office of Circuit Court Judge, 12th District [*sic*], 4th Judicial Subcircuit" was false. Because the statement was false, Goodman asked the Will County officers electoral board to declare that Ward's petition was "insufficient and not in compliance with the laws of the State of Illinois" and that it order that Ward's name not appear on the ballot.

In responding to Goodman's challenge, Ward did not dispute that he was not, in fact, a resident of the 4th Subcircuit at the time he filed his petition. Rather, his contention was that he was not obligated to meet the residency requirement until the time of the election. For the reasons we shall explain presently, the governing statutory provisions do not support Ward's view.

When construing the Election Code, courts employ the same basic principles of statutory construction applicable to statutes generally. See, *e.g.*, *Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997); *Illinois Campaign for Political Reform v. Illinois State Board of Elections*, 388 Ill. App. 3d 517, 518 (2009). Our primary objective is to ascertain and give effect to the intent of the legislature. The best indication of legislative intent is the language employed by the General Assembly, which must be given its plain and ordinary meaning. When statutory language is plain and unambiguous, the statute must be applied as written without resort to aids of statutory construction. *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 184-85 (2009).

Section 7–10 of the Election Code requires a candidate to include with his nomination petition a sworn statement of candidacy attesting that he or she "is qualified for the office specified." 10 ILCS 5/7–10 (West 2008). The word "is" indicates present tense, indicative mood. The legislature's use of this word evinces an intention to require candidates to meet the qualifications for the office they seek, including the residency requirement, at the time they submit the statement of candidacy which must accompany their nominating papers.

That this was the legislature's intention is further supported by the form for the statement of candidacy included by the legislature in the text of section 7–10 (10 ILCS 5/7–10 (West 2008)). The form's language calls for a candidate to swear or affirm that, among other things, "I *am* legally qualified (including being the holder of any license that may be an eligibility requirement for the office I seek the nomination for) to hold such office ***." (Emphasis added.) 10 ILCS 5/7–10 (West 2008). Because "am" indicates present tense and because the signed statement must accompany the nominating petition when it is filed, the statute can only be understood to mean that a candidate must meet the qualifications of office at the time he or she files a nomination petition with electoral authorities. No principle of English grammar or statutory construction permits an interpretation of the law which would allow candidates to defer meeting the qualifications of office until some later time.

This conclusion is supported by our decision in *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008). Construing identical language in section 10–5 of the Election Code (10 ILCS 5/10–5 (West 2008)), we held in that case:

> "The statement of candidacy and accompanying oath are phrased in the present tense. Thus, when a candidate submits his or her nomination papers to run for office, the candidate swears that he or she is–not will be–qualified for the office sought. In other words, the candidate is eligible to run for office and not merely to hold office." *Cinkus*, 228 Ill. 2d at 219.

See also *Lewis v. Dunne*, 63 Ill. 2d 48, 53 (1976) (purpose of requiring statement of candidacy to be included as part of a candidate's nominating papers is "to obtain a sworn statement from the candidate establishing his qualifications *to enter the primary*

*election* for the office he seeks" (emphasis added)).

The statutory requirements governing statements of candidacy and oaths are mandatory. *Cinkus*, 228 Ill. 2d at 219. If a candidate's statement of candidacy does not substantially comply with the statute, the candidate is not entitled to have his or her name appear on the primary ballot. See *Lawlor v. Municipal Officer Electoral Board*, 28 Ill. App. 3d 823, 829-30 (1975). Though Ward did sign the statutorily required statement of candidacy and submit it with his nomination petition in the case before us, the statement did not satisfy statutory requirements. As we have discussed, his representation that "I am legally qualified to hold the office of Circuit Court Judge, 12th District [*sic*], 4th Judicial Subcircuit" was untrue. Ward did not meet the qualifications for office because, by his own admission, he was not then a resident of the 4th Subcircuit. The electoral board should therefore have sustained Goodman's objections to Ward's nominating papers and ordered that Ward's name not be printed on the ballot for the February 2010 primary election.

When it rejected Goodman's challenge, the electoral board did not do so because it construed the statutory requirements set forth in 7–10 of the Election Code (10 ILCS 5/7–10 (West 2008)) differently than we have just explained them. It did not construe those statutory requirements at all. Instead, it looked directly to provisions of the Illinois Constitution governing eligibility for judicial office (Ill. Const. 1970, art. VI, §11) and the election of judges (Ill. Const. 1970, art. VI, §12(a)). It interpreted those provisions as requiring only that a person be a resident of the subcircuit at or after the time he or she is actually elected.[1] Accordingly, it concluded that Ward's nominating papers were sufficient, notwithstanding his current residency outside the subcircuit.

Implicit in the electoral board majority's approach was that the

---

[1]The electoral board offered no opinion as to which of those deadlines (at or after election) had to be met in order to satisfy the Constitution's eligibility requirements. For the purposes of this case, the electoral board considered it sufficient to hold simply that Ward's lack of residency in the subcircuit prior to the election was not a valid basis for striking his name from the primary ballot.

Constitution's eligibility requirements differed from those contained in the Election Code and that to the extent of the difference, the provisions of the Election Code were unconstitutional and could be disregarded. This was a determination the electoral board had no authority to make.

Section 10–10 of the Election Code (10 ILCS 5/10–10 (West 2008)), which is applicable to judicial elections pursuant to section 7–12.1 of the Code (10 ILCS 5/7–12.1 (West 2008)), limits the scope of an election board's inquiry with respect to nominating papers to ascertaining whether those papers comply with the governing provisions of the Election Code. See *Delgado v. Board of Election Commissioners*, 224 Ill. 2d 481, 485 (2007); *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 68 (1988); *Nader v. Illinois State Board of Elections*, 354 Ill. App. 3d 335, 340 (2004). Administrative agencies such as the electoral board have no authority to declare statutes unconstitutional or even to question their validity. *Texaco-Cities Service Pipeline Co. v. McGaw,* 182 Ill. 2d 262, 278 (1998); see *Wiseman v. Elward*, 5 Ill. App. 3d 249, 257 (1972). When they do so, their actions are a nullity and cannot be upheld. See *Delgado*, 224 Ill. 2d at 485. For this reason, as well as the reasons previously explained, the electoral board's decision in this case was properly set aside.

While election boards are not entitled to assess the constitutionality of Election Code requirements when considering objections to nominating papers, there is no dispute that the courts may do so on judicial review. As we shall now explain, the provisions of the Election Code involved in this case do not run afoul of the applicable provisions of the Illinois Constitution. To the contrary, they are entirely consistent.

Section 12 of article VI (Ill. Const. 1970, art. VI, §12), which pertains to the election, retention and appointment of judges of the supreme, appellate and circuit courts, provides, in relevant part:

> "A person eligible for the office of Judge may cause his name to appear on the ballot as a candidate for Judge at the primary and at the general or judicial elections by submitting petitions. The General Assembly shall prescribe by law the requirements for petitions." Ill. Const. 1970, art. VI, §12(a).

Under the clear and unambiguous language of this provision, a

person must be "eligible for the office of Judge" in order to undertake the steps necessary to have his or her name appear on a ballot as a candidate for judge at the primary and at the general or judicial elections. "Eligible" means "fitted or qualified to be chosen or used" (Webster's Third New International Dictionary 736 (1976)); "[f]it and proper to be selected or to receive a benefit" or "legally qualified for an office, privilege, or status" (Black's Law Dictionary 597 (9th ed. 2009)). It denotes someone or something which presently fits the requirements for selection. As with the governing statutes, there is no provision under section 12 for the filing of petitions by persons who do not yet meet eligibility requirements but assert that they will sometime in the future.

Pursuant to section 12, eligibility for judicial office is therefore a prerequisite to running for that office. Under section 11, eligibility requires that one be a "resident of the unit which selects him." Ill. Const. 1970, art. VI, §11. While there may be contexts in which the language of article VI, section 11, is "arguably ambiguous" (*Thies v. State Board of Elections*, 124 Ill. 2d 317, 323 (1988)), the situation presented by this case is not among them. Giving sections 11 and 12 their plain and ordinary meaning, it is therefore clear that under our Constitution, candidates for the office of circuit, appellate or supreme court judge must be residents of the unit from which they seek election before they may cause their names to appear on the ballot for the primary election. See *Maddux v. Blagojevich*, 233 Ill. 2d 508, 514 n.3 (2009). If they are not residents, they are simply ineligible to run. If they attempt to run when they do not meet the constitutionally mandated residency requirement and manage to win the election, they will be subject to removal from office by the Illinois Courts Commission. *In re Golniewicz*, 4 Ill. Cts. Com. 9, 39-40 (2004).

In opposing the result reached by the lower courts in this case, the nonresident candidate protests that it represents a profound shift in the law. But we have seen no authority to support his view. To the contrary, the notion that candidates for office must meet the constitutionally mandated eligibility requirements in order to initiate the selection process appeared settled before the electoral board ruled as it did in this case. Indeed, that this was the law informed the approach our own court took when fashioning the procedures for the selection of associate judges. Paralleling the constitutionally bound

statutory scheme applicable to elected judges, the rule we adopted for appointment of associate judges requires that an applicant for that office already be "a resident of the unit from which he/she seeks appointment" when he or she submits an application. Ill. S. Ct. R. 39(b)(2) (eff. July 1, 2009).

Because article VI of the Constitution requires candidates for judicial office to meet the qualifications for the position, including the residency requirement, before submitting petitions to have their names appear on the ballot for election, the nonresident candidate in this case cannot validly complain that the General Assembly impermissibly altered constitutional eligibility requirements when it enacted the provisions of the Election Code at issue here. Section 12(a) of article VI of the Constitution (Ill. Const. 1970, art. VI, §12(a)) conferred on the General Assembly the authority to prescribe by law the requirements for petitions for judicial office, and the provisions of the Election Code governing such provisions are entirely consistent with the substantive constitutional requirements contained in sections 11 and 12 of article VI. In contrast to cases such as *Thies v. State Board of Elections*, 124 Ill. 2d 317 (1988), and *Maddux v. Blagojevich*, 233 Ill. 2d 508 (2009), the matter before us therefore does not present a situation where the General Assembly has, through legislative action, improperly attempted to impose requirements for judicial office beyond those specified in article VI.

While there is nothing in either the statutes enacted by the General Assembly or the provisions of article VI of the Constitution (Ill. Const. 1970, art. VI) to support the result reached by the electoral board, the electoral board majority found it significant that articles IV and V of the Illinois Constitution (Ill. Const. 1970, arts. IV, V), which deal, respectively, with the legislative and executive branches, impose durational residency requirements on candidates. To be eligible to serve in the legislature, one must have resided in the district he or she is to represent for two years preceding his or her election or appointment. Ill. Const. 1970, art. IV, §2(c). To be eligible for the executive branch offices of Governor, Lieutenant Governor, Attorney General, Secretary of State, Comptroller, and Treasurer, one must have resided in Illinois for the three years preceding his or her election. Ill. Const. 1970, art. V, §3. In the electoral board's view, requiring candidates for judicial office to be residents of the units from

-12-

which they seek election at the time they file their nominating papers is, in effect, a form of durational residency requirement. The board believed that if the framers of the constitution had wished to impose such a requirement, they would have employed language similar to that found in articles IV and V.

For reasons explained earlier in this opinion, the electoral board overstepped its authority when it undertook this constitutional analysis. It should have confined its inquiry to whether Ward's nominating papers complied with the governing provisions of the Election Code. In any case, the electoral board's concerns on this point are misplaced. In defining eligibility requirements for office, the language employed by the framers for legislators and executive branch officers on the one hand and judges on the other is different. But that is because the substantive provisions are different. For legislators and executive branch officers, the framers found it appropriate to impose significant and specific minimum state residency periods prior to the election. For judges, who must meet a different set of eligibility requirements, the framers found it more appropriate to require that all applicable requirements, including residency in the selecting unit, be met no later than when a candidate for election to judicial office seeks to have his or her name appear on the ballot by submitting petitions. No rule of law forbids states from imposing different eligibility requirements for membership in the different branches of its government, and no principle of legal reasoning permits an inference that the framers did not intend to do precisely that here.

## CONCLUSION

For the foregoing reasons, the electoral board erred when it denied the objections to Ward's nominating papers asserted by Goodman. The circuit court ruled correctly when it reversed the electoral board's decision and ordered that Ward's name not appear on the official

-13-

ballot for the February 2010 primary election. We therefore affirm the judgment of the appellate court, which affirmed the judgment of the circuit court.

Affirmed.

CHIEF JUSTICE KILBRIDE took no part in the consideration or decision of this case.