# Illinois Official Reports

## Appellate Court

---

**Schmidt v. Illinois State Board of Elections, 2016 IL App (4th) 160189**

---

| | |
|---|---|
| Appellate Court Caption | JULIE A. SCHMIDT, Plaintiff-Appellant, v. THE ILLINOIS STATE BOARD OF ELECTIONS; STATE OFFICERS ELECTORAL BOARD; CHARLES W. SCHOLZ, ERNEST L. GOWEN, WILLIAM J. CADIGAN, ANDREW K. CARRUTHERS, BETTY J. COFFRIN, JOHN R. KEITH, WILLIAM M. McGUFFAGE, and CASANDRA B. WATSON, All in Their Official Capacities as Members of the Duly Constituted State Officers Electoral Board; JOHN A. CUNNINGHAM, Not Individually but in His Capacity as Kane County Clerk; DAVID ORR, Not Individually but in His Capacity as Cook County Clerk; and ANNA MOELLER, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-16-0189 |
| Filed | December 8, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 16-MR-22; the Hon. John P. Schmidt, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jeffrey A. Meyer (argued) and Peter Thomas Smith, of Klein, Stoddard, Buck & Lewis, LLC, of Sycamore, for appellant.<br><br>Michael J. Kasper (argued), of Fletcher, Topol, O'Brien & Kasper, P.C., of Chicago, and James M. Morphew, of Sorling Northrup, of Springfield, for appellee Anna Moeller. |

Lisa Madigan, Attorney General, of Springfield (Richard S. Huszagh, Assistant Attorney General, of counsel), for other appellees.

Panel        JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Turner and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1      In December 2015, plaintiff, Julie A. Schmidt, filed a petition with the Illinois State Board of Elections, sitting as the State Officers Electoral Board (Board), objecting to the nominating papers of defendant, Anna Moeller, a Democratic candidate for the office of Representative in the Illinois General Assembly for the 43rd Representative District. In response, Moeller filed a motion for summary judgment, which the Board granted. On judicial review, the circuit court affirmed the Board's decision. Schmidt appeals, arguing Moeller's nominating papers were invalid because, during the same election cycle, she signed both her own statement of candidacy as a Democratic Party candidate and the nominating petition of a Republican Party candidate in violation of section 8-8 of the Election Code (10 ILCS 5/8-8 (West 2014)). We affirm.

¶ 2      **I. BACKGROUND**

¶ 3      The undisputed facts demonstrate that, on September 5, 2015, Moeller signed petition sheets in support of her nomination as the Democratic Party candidate for the office of Representative for the 43rd District. On September 26, 2015, she signed a petition sheet for Sandy Wegman, a Republican Party candidate who sought nomination for the office of Kane County Recorder. On November 23, 2015, Moeller filed her own nomination papers with the Board to place her name on the March 15, 2016, primary election ballot as a candidate for the office of Representative for the 43rd District. Her papers included a signed statement of candidacy, notarized on November 19, 2015, in which she asserted that she was "a qualified primary voter of the Democratic Party."

¶ 4      On December 7, 2015, Schmidt filed a verified objector's petition with the Board, objecting to Moeller's nomination papers. She cited section 8-8 of the Election Code (10 ILCS 5/8-8 (West 2014)), which provides that "[a] 'qualified primary elector' of a party may not sign petitions for or be a candidate in the primary of more than one party." Schmidt argued Moeller violated that section by signing the nominating petition of a Republican Party candidate and running for office as a Democratic Party candidate. She asked that the Board declare Moeller's nominating papers and petition defective or invalid and bar Moeller's name from being printed on the March 15, 2016, primary election ballot.

¶ 5      On December 16, 2015, Moeller filed a motion for summary judgment. She agreed with Schmidt's assertion that "a person may not sign the petitions of more than one political party in any particular primary election." However, Moeller cited the First District's decision in

*Watkins v. Burke*, 122 Ill. App. 3d 499, 461 N.E.2d 625 (1984), for the proposition that "when a person signs for more than one political party at the same election, the first signature in time is valid and all subsequent signatures for a different political party are invalid." Moeller alleged she signed her own nominating petition and those of other Democratic Party candidates prior to signing a petition for Wegman, a Republican Party candidate. Thus, she maintained she affiliated herself with the Democratic Party prior to signing Wegman's petition and, as a result, her own nominating papers were valid.

¶ 6    On December 23, 2015, a hearing was conducted before the Board's hearing officer. On January 5, 2016, the hearing officer recommended that the Board grant Moeller's motion for summary judgment and overrule Schmidt's petition in its entirety. On January 7, 2016, the Board conducted a hearing in the matter. It granted Moeller's motion for summary judgment and overruled Schmidt's objection. The Board found as follows:

> "[Moeller's] Statement of Candidacy does not violate Section 8-8 of the Election Code because [Moeller] has not impermissibly signed a nominating petition for a candidate of one established political party and subsequently run as a candidate for another established political party in the same election cycle; rather, [Moeller's] first act of political affiliation was to align herself with the Democratic Party by signing her own petition. The act of signing a Republican candidate's petition after signing her own Democratic petition and before seeking nomination as a Democratic Party candidate rendered [Moeller's] signature on the Republican petition invalid but did not invalidate her petition."

¶ 7    On January 12, 2016, Schmidt filed a petition for judicial review of the Board's decision pursuant to section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2014)). On February 10, 2016, the circuit court affirmed the Board's decision.

¶ 8    This appeal followed.

¶ 9                                  II. ANALYSIS

¶ 10    On appeal, Schmidt argues the Board erred in overruling her objection to Moeller's nomination papers and granting summary judgment in Moeller's favor. "Where *** an electoral board's decision is challenged in court pursuant to section 10-10.1 of the Election Code [citation] the proceeding is in the nature of administrative review." *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶ 19, 28 N.E.3d 170. On appeal, we review the electoral board's decision rather than that of the circuit court. *Id.* Additionally, where the "facts are admitted or established and the only dispute concerns whether the governing legal provisions were interpreted correctly," we apply a *de novo* standard of review. *Id.* ¶ 20.

¶ 11                                 A. Mootness

¶ 12    Initially, we note Moeller argues Schmidt's appeal is moot. "A case on appeal is moot where the issues raised below no longer exist because events subsequent to the filing of the appeal make it impossible for the reviewing court to grant the complaining party effectual relief." *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 423-24, 939 N.E.2d 368, 371 (2010). We find the public interest exception to the mootness doctrine applies under the circumstances presented. That exception "permits a court to reach the merits of a case which

would otherwise be moot if the question presented is of a public nature, an authoritative resolution of the question is desirable for the purpose of guiding public officers, and the question is likely to recur." *Goodman v. Ward*, 241 Ill. 2d 398, 404, 948 N.E.2d 580, 584 (2011). A question of election law is, inherently, a matter of public concern. *Id.* at 404, 948 N.E.2d at 585. Further, we find no case addressing the precise factual question presented here. Therefore, an authoritative resolution is desirable for guiding public officers. Finally, contrary to Moeller's assertion, we find the issue presented by this case is likely to recur. Therefore, we will address the merits of Schmidt's appeal.

¶ 13                                    B. Validity of Moeller's Nomination Papers

¶ 14        On appeal, Schmidt asserts Moeller's nomination papers should be held invalid. She argues the plain language of section 8-8 of the Election Code prohibited Moeller from signing petitions or being a candidate for more than one party in a single election cycle and Moeller violated that provision by being a candidate for the Democratic Party and signing the nominating petition of a Republican Party candidate.

¶ 15        The issue presented on appeal concerns the Board's interpretation of a provision of the Election Code. "When determining how the Election Code should be construed, we employ the same basic principles of statutory construction applicable to statutes generally." *Jackson-Hicks*, 2015 IL 118929, ¶ 21, 28 N.E.3d 170. "Our primary objective is to ascertain and give effect to the intent of the legislature." *Id.* "When statutory language is plain and unambiguous, the statute must be applied as written without resort to aids of statutory construction [citation], and the court will not read into it exceptions, conditions, or limitations that the legislature did not express [citation]." *Id.* "Where the meaning of a statute is ambiguous, courts may look beyond the statutory language and consider the purpose of the law, the evils it was intended to remedy, and the legislative history of the statute." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 217, 886 N.E.2d 1011, 1022 (2008).

¶ 16        Section 8-8 of the Election Code concerns the form of nomination petitions for members of the General Assembly. 10 ILCS 5/8-8 (West 2014). It provides that each petition must include "a statement of candidacy," stating "that the candidate is a qualified primary voter of the party to which the petition relates." *Id.* Relevant to this appeal, section 8-8 also provides that "[a] 'qualified primary elector' of a party may not sign petitions for or be a candidate in the primary of more than one party." *Id.*

¶ 17        Here, Moeller signed nominating petitions of Democratic candidates and a Republican candidate. She also submitted nomination papers to run as a Democratic candidate in the primary election. Moeller's conduct clearly violated the restriction set forth in section 8-8 against signing petitions or being a candidate in the primary of more than one party. However, the Election Code is silent as to the consequences for such a violation. Schmidt asserts that, because Moeller signed a petition for a Republican Party candidate, she was prohibited from running for office as a Democratic Party candidate and her nomination papers must be held invalid. Conversely, Moeller argues that since she first affiliated herself with the Democratic Party by signing her own nominating petition, her nomination papers were valid and she was entitled to run for office as a Democratic Party candidate. For the reasons that follow, we agree with Moeller.

¶ 18	Both Moeller and the Board relied on the First District's decision in *Watkins*, 122 Ill. App. 3d 499, 461 N.E.2d 625, to support the validity of Moeller's nomination papers. There, the court held "that where an otherwise qualified voter has signed the nominating petitions of more than one party, the signature appearing on the petition first signed is valid and all subsequent signatures appearing on the nominating petitions of other parties are invalid." *Id.* at 502, 461 N.E.2d at 627. The underlying facts in that case showed the plaintiff filed objections to the nominating petitions of the defendant, a candidate for Democratic ward committeeman. *Id.* at 500, 461 N.E.2d at 626. He asserted the petitions violated a provision of the Election Code similar to the one at issue in the case at bar, which prohibited any person from signing petitions or being a candidate in the primary of more than one party. *Id.* Specifically, in that case, the plaintiff alleged that 382 voter names that appeared on the defendant's petitions also appeared on the nominating petitions of a Republican Party candidate. *Id.* The Board rejected the plaintiff's objections, concluding "that if the voters in question had signed [the defendant's] nominating petitions for Democratic ward committeeman before signing the Republican nominating petitions, then the signatures on [the defendant's] petitions were valid." *Id.* at 501, 461 N.E.2d at 626. The plaintiff appealed, arguing, in part, that "voters who sign[ed] the nominating petitions of more than one party should have their names stricken from a nominating petition irrespective of the order of signing." *Id.*

¶ 19	On review, the First District agreed with the Board and stated as follows:

> "The construction urged by [the] plaintiff would automatically curtail the right of an otherwise qualified voter to participate in the primary electoral process by signing a nominating petition if the voter even inadvertently signed the nominating petitions of more than one party. [The] [p]laintiff argues that under these circumstances a voter's signature would be *per se* invalid and that the name should be stricken from the nominating petitions of both political parties. We do not believe that this draconian sanction represents the reasoned intent of our legislature, nor does the language of the above cited statute mandate such a drastic result." *Id.* at 501-02, 461 N.E.2d at 627.

The court went on to find its resolution to be "less restrictive" and "consistent with the legislative intent evinced in *** the Election Code that a person signing a nominating petition be qualified *at the time of signing* as well as with the laudable public policy of protecting the right of the electorate to participate in the primary electoral process." (Emphasis in original.) *Id.* at 502, 461 N.E.2d at 627.

¶ 20	Here, the undisputed facts demonstrate Moeller first signed her own nominating petition as a Democratic candidate for Representative and thereafter signed the nominating petition of a Republican candidate for a different office. Under *Watkins*, Moeller's signature on her own petition was valid and her signature on the petition of the Republican candidate was invalid. After signing the nominating petitions at issue, Moeller filed her nomination papers, which included a signed statement of candidacy, asserting she was a qualified primary voter of the Democratic Party. Given the rule set forth in *Watkins*, Moeller's statement of candidacy was accurate and her nomination papers were valid.

¶ 21	Schmidt asserts *Watkins* is factually distinguishable from the present case because it involved only the validity of voter signatures and not, like the present case, a candidate for office. Alternatively, she challenges that decision on the basis that it "craft[s] an exception to the prohibition in [s]ection 8-8 that does not exist in the statute," *i.e.*, a "sequence of signing exception."

- 5 -

¶ 22    To support her arguments, Schmidt has relied on the First District's more recent decision in *Rosenzweig v. Illinois State Board of Elections*, 409 Ill. App. 3d 176, 946 N.E.2d 1113 (2011). There, the respondent, Hebda, signed a nominating petition for a Democratic Party candidate for the office of Representative for the 59th Representative District. *Id.* at 177, 946 N.E.2d at 1114. The following month, she decided to run for the same office as a Republican Party candidate and signed her own nominating petition and statement of candidacy. *Id*. at 177, 946 N.E.2d at 1114-15.

¶ 23    On review, the First District initially noted Hebda violated section 8-8 because she signed a nominating petition for a Democratic candidate and subsequently signed her own nominating petition to run as a Republican candidate. *Id.* at 180, 946 N.E.2d at 1117. It cited *Watkins* for the proposition that "[w]here a person signs nominating petitions for more than one party, the first signature is valid and all subsequent signatures are invalid." *Id.* However, the court concluded its analysis did not end there because, "[w]hile Hebda violated the restriction by signing nominating petitions for more than one party, [the court] must also determine whether her candidacy itself was a violation of the remaining restriction in section 8-8." *Id.* It addressed the rationale behind the restrictions, stating as follows:

> "The Seventh Circuit explained the reasoning behind a parallel provision in the Election Code that prohibits circulators from soliciting signatures for nominating petitions on behalf of more than one political party in a single election cycle. [Citation.] The court explained that such restrictions prevent political maneuvers that could affect the quality of the candidates who will be on the ballot. [Citation.] If one party determines that a certain opponent will be a weaker candidate in the general election, that party could circulate petitions on behalf of the weaker candidate for the primary election in the hope that votes will be drawn away from an opposition candidate the party deems to propose a greater threat to its chances of prevailing in the general election." *Id.* at 181, 946 N.E.2d at 1117 (citing *Citizens for John W. Moore Party v. Board of Election Commissioners*, 794 F.2d 1254, 1261 (7th Cir. 1986)).

The court found that what Hebda did was "an even more egregious example of the type of political maneuvering that the restriction intend[ed] to prevent because she signed the nominating petition of a candidate for the very office for which she intended to run, in effect, supporting the nomination of her own opponent." *Id*. The court then held "section 8-8 of the Election Code prohibit[ed] signing a nominating petition for a candidate from one political party and then running as a candidate for another political party in the same election cycle." *Id.* at 181, 946 N.E.2d at 1117-18.

¶ 24    Schmidt argues *Rosenzweig* did not depend on the sequencing of signatures and supports her position that Moeller could not run as a candidate for the Democratic Party when she also signed the petition of a Republican Party candidate. First, to the extent Schmidt asserts *Rosenzweig* stands for the proposition that the sequencing of signatures is irrelevant, we disagree. We note that given the factual circumstances in *Rosenzweig*, it is wholly consistent with *Watkins*. Specifically, because the respondent in *Rosenzweig* first signed the petition of a Democratic candidate, she could not later run as a Republican candidate. Second, in *Rosenzweig*, the First District relied heavily on its finding that the respondent engaged in an "egregious" from of political maneuvering, noting she signed the petition of a Democratic candidate and then ran for the same office as a Republican. The present case is factually distinguishable, in that Moeller did not sign the nominating petition of her opponent but of a

- 6 -

Republican candidate running for a completely separate office. Additionally, the record fails to suggest that she was engaging in any type of political maneuvering or that she did anything more than inadvertently sign petitions for more than one party.

¶ 25 Next, to the extent Schmidt challenges *Watkins* as wrongly decided, we disagree. Contrary to Schmidt's assertions, *Watkins* did not craft a "sequence of signing exception" into the Election Code. Rather, it determined the consequences for a violation of a restriction in the Election Code where the statute was otherwise silent and ambiguous. Additionally, we note that "[w]here *** the legislature chooses not to amend a statute after a judicial construction, it will be presumed that the legislature acquiesced in the court's statement of legislative intent." *Nelson v. Artley*, 2015 IL 118058, ¶ 23, 40 N.E.3d 27. In this instance, *Watkins* was decided in 1984. Given the legislature's failure to amend the relevant statutory language, we find the First District's interpretation of that language in *Watkins* is consistent with legislative intent. Further, although *Watkins* involved the validity of only voter signatures, we find no reason to hold it inapplicable to the signatures of a candidate for office.

¶ 26                          III. CONCLUSION

¶ 27 For the reasons stated, we affirm the circuit court's judgment affirming the Board's decision.

¶ 28 Affirmed.