2016 IL App (2d) 160115
No. 2-16-0115
Opinion filed May 2, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| JENNIFER SHILAKIS WIESNER, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16-MR-104 |
| | ) | |
| JOAN C. BRENNAN, | ) | |
| | ) | |
| Respondent-Appellant | ) | |
| | ) | |
| (The Du Page County Election Commission; | ) | |
| Cathy Terrill, as Chairperson of the Du Page | ) | |
| County Election Commission; Arthur Ludwig, | ) | |
| as Secretary of the Du Page County Election | ) | |
| Commission; Robert Saar, as Executive | ) | |
| Director of the Du Page County Election | ) | |
| Commission; and John Z. Toscas, as Attorney | ) | Honorable |
| and Hearing Officer for the Du Page County | ) | Bonnie M. Wheaton, |
| Election Commission, Respondents). | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Zenoff and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1     Jennifer Shilakis Wiesner (Candidate) filed nomination papers to be a candidate of the

Democratic Party for nomination to the office of resident circuit court judge for the Eighteenth

Judicial Circuit, Du Page County, in the March 15, 2016, general primary election.  After Joan C.

Brennan (Objector) filed objections to the nomination papers, the Du Page County Election

Commission (Commission) found Candidate to be ineligible to be on the ballot pursuant to section 7-10 of the Illinois Election Code (10 ILCS 5/7-10 (West 2014)). On judicial review, the trial court set aside the Commission's decision and ordered that Candidate's name be placed on the ballot. On appeal, Objector argues: (1) the Commission did not err by finding that Candidate's statement of candidacy and petition sheets were not properly notarized under section 7-10 of the Election Code; (2) the Commission erred by finding that Candidate's nomination papers, which did not contain uniform headings and named two different offices, substantially complied with the Election Code; and (3) the Commission erred when it failed to default Candidate as a result of Candidate's and her attorney's conduct during the Commission's hearing.

¶ 2    On March 3, 2016, this court entered a written order affirming the judgment of the trial court and reversing the Commission's order, stating that the Commission's "decision to remove the Candidate from the March 15 primary ballot was reversible error." Our written order also stated that a "full disposition will be filed in due course." This is that disposition.

¶ 3                                    I. BACKGROUND

¶ 4    On December 7, 2015, Objector filed her petition objecting to Candidate's nomination papers to fill the vacancy of the Honorable John T. Elsner (the Office), to be voted upon at the general primary election on March 15, 2016. Objector alleged that Candidate's nomination papers were invalid because they contained names of persons: (1) "who are not registered voters at the addresses shown opposite their respective names"; (2) "who are not active registered voters at the addresses shown opposite their respective names"; (3) "[for] whom addresses are stated which are not in Du Page County, State of Illinois, and such signatures are not valid"; (4) "who did not sign said papers in their own proper persons, and said signatures are not genuine and are forgeries"; (5) "who are not registered voters of the Democratic Party"; (6) "who have

signed the Nomination Papers more than one time"; (7) "who have signed the Nomination Papers for more than one candidate for the same office"; and (8) whose names "are not signed but rather printed, and said 'signatures' are not genuine signatures." The petition also alleged that Candidate's nomination papers, pages 59 through 80 (consisting of 272 signatures), were "legally void" because:

> "(a) each petition sheet states that the Candidate be nominated for the 'office of Judge of the Circuit Court,' which is an entirely different office than that for which these nomination papers have been filed; (b) 10 ILCS 5/7-10 and 5/8-8 requires *inter alia*, that nomination papers specifically identify 'the office' being sought by the Candidate and further that 'the heading of each sheet shall be the same;' (c) individual petition sheets identifying an incorrect office within a set of nomination papers are legally insufficient and void, rendering all signatures on petition sheets nos. 59 through 80, inclusive, in violation of the Illinois Election Code."

The objection alleged that Candidate's nomination papers contained fewer than 500 "validly collected signatures of qualified and duly registered voters of Du Page County *** signed by such voters in their own proper person with proper addresses, far below the number required under Illinois law, as set forth in [the attached] Appendix-Recapitulation."

¶ 5 Candidate filed a motion to strike Objector's allegations regarding the designation of office. Candidate argued that the designation of office was sufficient and that, even if all of the individual line-item objections were sustained and those signatures on pages 59 through 80 were struck, Candidate would have enough signatures to remain on the ballot.

¶ 6 On December 21, 2015, the Commission convened and gave Objector a deadline to respond to Candidate's motion to strike. In addition, the Commission's counsel stated that "the [Commission] will deal with [Candidate's] Motion to Strike at the outset of the hearing."

¶ 7    On January 7 and 20, 2016, the Commission conducted a hearing on Objector's petition. At the outset of the hearing, Candidate requested the Commission to rule on her motion to strike; however, the Commission refused to do so.

¶ 8    On direct examination by Objector's counsel, Candidate testified that she signed as circulator on 11 petition sheets and signed her statement of candidacy. The following colloquy occurred between Objector's counsel and Candidate:

"Q. With regard to your signature on the statement of candidacy and also the petition sheets, did you raise your arm and take an oath that you were swearing that each one was being signed by you?

A. Yes.

Q. An oath was administered to you by the notary?

A. Terra Howard.

Q. Did she administer an oath to you?

A. No, she did not administer an oath to me before I signed, no. On my signature sheets, correct.

Q. And on the statement of candidacy, correct?

A. On the statement of candidacy, no, I did not raise my hand and be sworn in before I signed the statement of candidacy.

Q. That statement of candidacy is the same person?

A. That's me.

Q. The same person that notarized it, correct?

A. Terra Howard, yes.

Q. She didn't administer an oath, correct?

A. No. She knows who I am and I swore it was the truth and the whole truth.

Q. Did she administer an oath to you?

A. No, she did not.

* * *

Q. All of [the sheets where you appear as the circulator] bear the notary seal of Terra, T-e-r-r-a, Costa Howard, correct?

A. Correct, she notarized me.

Q. All the other notary seals on all the other petition sheets where she appears as a notary bears the date of November 28, 2015?

A. Right. We drove around that day doing that.

Q. You were there with her?

A. Yes.

Q. Did she administer the oath to the individuals that were signing these petition sheets?

A. No. She just checked their IDs or knew them personally from previous interactions with them.

MR. LADUZINSKY [Objector's attorney]: Move to strike as nonresponsive. She answered at first and then is adding testimony to the question.

MR. TOSCAS [Commission's attorney]: You want [to] strike the second part of the answer as nonresponsive?

MR. LADUZINSKY: The second part as nonresponsive.

MR. TOSCAS: That will be stricken.

Q. Fair to say with regard to the notary, the notary never administered an oath to any of the individuals you were driving around with, right?

A. Yes. She notarized some other people on here. I can only speak to the ones I saw on that date. I think she notarized her husband and daughter. I was not present for those."

¶ 9 On January 20, 2016, the Commission issued its ruling. It found that Candidate's nominating petition contained 966 signatures. The Commission stated the following. During the course of the evidentiary hearing Objector "adduced evidence that Terra Howard, one of the Notaries in connection with the Candidate's Nominating Petition, did not actually administer an oath or affirmation to any circulator." Further, Candidate "stipulated that Terra Howard did not actually administer an oath or affirmation to any circulator who circulated the Candidate's Nominating Petition." The Commission also stated that Objector "withdrew her objections as to the individual signatures set forth in her Objector's Petition but did not withdraw her general objection that the Candidate's Nomination Petition fails to contain the minimum number of signatures required for office." Candidate argued that the Commission could not consider the "Notary issue," because Objector did not set forth this objection in her petition. Alternatively, Candidate also argued that there was substantial compliance. Alternatively, Candidate argued that her nominating petition contained more than 500 valid signatures even discounting the signatures that appeared on sheets involving Terra Howard as notary.

¶ 10 The Commission ruled that Candidate's name was precluded from appearing on the March 15, 2016, general primary election ballot for the Office. The Commission found that Candidate stipulated that notary Terra Howard did not administer an oath or affirmation to the circulators of the petition sheets "despite the mandatory requirements" of section 7-10 of the Election Code. Thus, the Commission struck all 509 signatures contained on petition sheets notarized by Howard. The Commission found that this reduced to 457 the number of valid signatures supporting Candidate's nominating petition, 43 below the required 500. Therefore,

the Commission "[s]ustain[ed] the Objector's general objection that Candidate's Nominating Petition does not contain the minimum number of valid signatures required for the Office." The Commission also struck Candidate's statement of candidacy because Candidate failed "to swear or affirm to her candidacy as mandated" by section 7-10 of the Election Code.

¶ 11    The Commission "overruled" Objector's challenge to Candidate's petition sheets 59 through 80, which was based on the headings on the petition sheets designating the Office. The Commission noted that some of the petition sheets (1-58) designated the Office as "Resident Circuit Court Judge to fill the vacancy of the Honorable John T. Elsner, for the 18th Judicial Circuit," while other sheets (59-80) designated the Office as "Judge of the Circuit Court to fill the vacancy of the Honorable John T. Elsner, for the 18th Judicial Circuit." The Commission found that, although the headings on the petition sheets were not the same, Candidate's nominating petition was in substantial compliance because the information, "to fill the vacancy of the Honorable John T. Elsner, for the 18th Judicial Circuit," was in the heading of every petition sheet and "adequately inform[ed] the voters of the specific office sought and [did] not lead to voter confusion." Regarding whether petition sheets 59 through 80 were invalid because the sheets failed to designate the Office as "resident judge" or "resident circuit judge," the Commission determined that the nominating petition was in full compliance because such a "moniker" may not be required by statute in the Eighteenth Judicial Circuit, Du Page County. In the alternative, if such a designation was required by law, there was substantial compliance because the designation on Candidate's petition sheets "adequately inform[ed] the voters of the specific office sought and [did] not lead to voter confusion."

¶ 12    On February 8, 2016, the circuit court of Du Page County reversed the Commission's decision and ordered that Candidate's name appear on the ballot for the general primary election to be held on March 15, 2016. Objector filed a timely notice of appeal on February 11, 2016.

¶ 13                                II. ANALYSIS

¶ 14    Judicial review of an electoral board's decision is considered to be administrative review. *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 46.  On appeal in such a case, we review the decision of the electoral board, not the determination of the trial court.  See *id.*  In *Goodman v. Ward*, 241 Ill. 2d 398, 405-06 (2011), the supreme court described the standards of review that govern appeals from the decisions of electoral boards:

> "As in other administrative review cases, the standard of review we apply to an election board's decision depends on what is in dispute, the facts, the law, or a mixed question of fact and law.  [Citation.]  ***
>
> Our court has held that where the historical facts are admitted or established, the controlling rule of law is undisputed and the issue is whether the facts satisfy the statutory standard, the case presents a mixed question of fact and law for which the standard of review is 'clearly erroneous.'  [Citation.]  We have also held, however, that where the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which our review is *de novo.*  [Citation.]"  *Id.*

¶ 15              A. Notarization of Statement of Candidacy and Petition Sheets

¶ 16    Objector argues that the Commission did not err by finding that the statement of candidacy and petition sheets were not properly notarized by Howard under section 7-10 of the Election Code.  Candidate argues that the Commission improperly permitted Objector to amend her petition, the Commission improperly conducted an evidentiary hearing on matters not contained within Objector's petition, and the Commission improperly determined the case solely on these extraneous matters.  After reviewing the record, we agree with Candidate.

¶ 17    The Commission is a creature of statute and its authority is derived from our legislature. See *Solomon v. Scholefield*, 2015 IL App (1st) 150685, ¶ 21.  It is "the unique province of the objector" to "raise issues [and] objections" to a candidate's petition and supporting papers. *Mitchell v. Cook County Officers Electoral Board*, 399 Ill. App. 3d 18, 27 (2010).  Section 10-8 of the Election Code explains that an "objector's petition *** shall state fully the nature of the objections to the certificate of nomination or nomination papers."  10 ILCS 5/10-8 (West 2014). An electoral board "will only consider written objections and the written specifications of such objections to the original petitions, as set forth in the objector's petition."  (Internal quotation marks omitted.)  *Samuelson v. Cook County Officers Electoral Board*, 2012 IL App (1st) 120581, ¶ 14.  Section 10-8 contains no provision for amendments to objections.  *Weber v. Winnebago County Officers Electoral Board*, 2012 IL App (2d) 120051, ¶ 13.  This court has held that the Election Code does not permit amendments to objections.  *Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 456 (2008).  Further, it is improper for an electoral board to raise its own objections to a nominating petition.  *Mitchell*, 399 Ill. App. 3d at 27; *Delay v. Board of Election Commissioners of the City of Chicago*, 312 Ill. App. 3d 206, 210 (2000).

¶ 18    In this case, Objector's petition claimed that the nominating petition sheets contained invalid signatures.  The petition specifically challenged the signers' purported addresses, their statuses as registered voters, registered Democrats, and residents of Du Page County, the genuineness of their signatures, whether they had signed nomination papers for more than one candidate, and their manner of "printing" their names rather than signing them.  Objector's petition also alleged that Candidate's nominating petition, sheets 59 through 80 (containing 272 signatures), were "legally void" because they identified an incorrect office.  Nothing in Objector's petition called upon Candidate to address whether the notary, Howard, administered

an oath or affirmation to Candidate or the circulators before they signed the statement of candidacy and the petition sheets, respectively. As noted, the objections regarding the validity of the nomination papers were significantly detailed, consisting of several paragraphs addressing the validity of the names contained on the petition sheets. However, none of the objections related to the notarization of the petition sheets. Further, no objection was raised regarding the statement of candidacy. Thus, the Commission exceeded its authority by invalidating Candidate's statement of candidacy and petition sheets on grounds never raised by Objector in her petition. See *Delay*, 312 Ill. App. 3d at 210 (holding that "the Board invalidated the plaintiff's nomination papers on a ground never raised in the objection and, in so doing, exceeded its statutory authority").

¶ 19    Objector contends that the issue of whether the statement of candidacy and petition sheets were properly notarized fell within the nature of the objections she raised. Objector argues that the Commission properly permitted questions to Candidate about all of the documents she filed as part of her nomination papers. Objector cites *Lewis v. Dunne*, 63 Ill. 2d 48 (1976), *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529, and *Fortas v. Dixon*, 122 Ill. App. 3d 697 (1984), to support her argument. Those cases are distinguishable from this case.

¶ 20    In *Lewis*, the objector alleged in his petition that the candidate's nomination papers were invalid because his statement of candidacy failed to list the specific vacancy as required by section 7-10 of the Election Code. *Lewis*, 63 Ill. at 50-51. The electoral board sustained the objection and invalidated the candidate's nomination papers. *Id*. The supreme court interpreted section 7-10 of the Election Code as providing that nomination papers must specify the vacancy, and it held that the statement of candidacy was a mere part of the nomination papers. *Id*. at 53. Since the candidate specified the correct vacancy on his nominating petitions as part of his nomination papers, the supreme court held that the candidate's failure to specify the vacancy in

his statement of candidacy did not render his nomination papers invalid. *Id*. at 50-51, 53. Nothing in *Lewis* permits an electoral board to consider matters beyond the scope of the objector's petition.

¶ 21    In *Cunningham*, 2012 IL App (1st) 120529, on appeal, the candidate argued that the election board improperly considered evidence of the circulators' failure to appear before a notary. *Id*. ¶ 32. The appellate court disagreed, holding that the issue was properly before the board and therefore before the appellate court because the objectors alleged in their petition that the circulators and a notary engaged in a pattern of fraud and false swearing. *Id*. ¶¶ 6, 33. In this case, Objector made no such allegation and actually withdrew her objection to the individual signatures on the petition sheets signed by the circulators. Thus, *Cunningham* is distinguishable from this case.

¶ 22    In *Fortas*, 122 Ill. App. 3d 697, the objector contended, *inter alia*, that certain of the signatures on the candidate's nominating petition were invalid "because the persons who presented the various sheets of the nominating petition to the signers were not the persons who signed the circulator's affidavit." *Id*. at 700. During a hearing before the electoral board, testimony established that someone other than the person signing the circulator's oath had circulated certain sheets of the petition. *Id*. at 699-700. The appellate court explained that the evidence showed "a pattern of fraud, false swearing, and total disregard for the mandatory requirements of the Election Code." *Id*. at 699. The appellate court held that the board had a right to strike, on that basis, a sheet to which the objector had not specifically objected. *Id*. at 701. Unlike the objector's petition in *Fortas*, Objector's petition in this case contained no allegation, either specific or general, that the statement of candidacy or certain petition sheets were invalid because the notary failed to administer an oath or affirmation to the signers. In fact,

Objector's petition made no mention of Candidate's statement of candidacy, the notary, or the signature of Candidate or any circulator. Accordingly, *Fortas* is distinguishable from this case.

¶ 23                    B. Designations of Office on Petition Sheets

¶ 24    Next, Objector argues that the Commission erred by finding that Candidate's nominating petition sheets, which did not contain uniform headings and designated two different offices, substantially complied with the Election Code. Candidate argues that the Commission properly found that the designations of office on the headings of her petition sheets were in substantial compliance with the Election Code since there was no basis for voter confusion. Candidate notes that all of the headings specified the office of circuit court judge and the correct vacancy.

¶ 25    There is no dispute that Candidate designated the office she sought differently on the headings of her petition sheets; on sheets 1 through 58 she designated the office being sought as "Resident Circuit Court Judge to fill the vacancy of the Honorable John T. Elsner, for the 18th Judicial Circuit," and on sheets 59 through 80 she designated the office being sought as "Judge of the Circuit Court to fill the vacancy of the Honorable John T. Elsner, for the 18th Judicial Circuit." In her petition, Objector challenged petition sheets 59 through 80 because the office being sought was "an incorrect office" and the headings on these sheets were not "the same" as the headings on other sheets because the headings on sheets 59 through 80 identified "an entirely different office than that for which these nomination papers have been filed." The question before us is whether Candidate's nomination papers met the requirements of section 7-10 of the Election Code. This is a question of law, which we review *de novo*. See *Salgado v. Marquez*, 356 Ill. App. 3d 1072, 1075 (2005).

¶ 26    Section 7-10 of the Election Code governs the form and content of nominating petitions. Section 7-10 states, "[e]ach sheet of the petition other than the statement of candidacy and candidate's statement shall be of uniform size and shall contain above the space for signatures an

appropriate heading giving the information as to name of candidate or candidates, in whose behalf such petition is signed; *the office*, the political party represented and place of residence; and the heading of each sheet *shall be the same*." (Emphases added.) 10 ILCS 5/7-10 (West 2014).

¶ 27 A candidate is entitled to have his name placed on the ballot if there is "no basis for confusion as to the office for which the nominating papers were filed." *Lewis*, 63 Ill. 2d at 53. In determining whether a candidate has complied with section 7-10, *Lewis* sets forth two requirements. First, the nomination papers as a whole must not create a basis for confusion as to the office sought. Second, the purpose of the papers that contain the incorrect office must not be frustrated by the error. See *id.* at 52-53.

¶ 28 In this case, it is clear that, as a whole, the nomination papers showed that Candidate sought the office of "Circuit Court Judge [or "Judge of the Circuit Court"] to fill the vacancy of the Honorable John T. Elsner, for the 18th Judicial Circuit." For purposes of determining if a failure to specify a particular office on a nominating petition frustrates the purpose of the petition, courts look to whether offices are of the same or of a different type; offices differ in type when the duties that they entail differ. *Salgado*, 356 Ill. App. 3d at 1079. Here, the Commission determined that, although the headings on the petition sheets were not the same, Candidate's nominating petition was in substantial compliance because the information, "to fill the vacancy of the Honorable John T. Elsner, for the 18th Judicial Circuit," was in the heading of every petition sheet and "adequately inform[ed] the voters of the specific office sought and [did] not lead to voter confusion." We agree with the Commission's analysis. Based on the pages' clear headings, which indicated a specific office and vacancy, the signatories to those pages would have been fully aware of the specific office Candidate sought. "If nominating papers describe only one possible vacancy in that district, then there is no basis for confusion."

*Pascente v. County Officers Electoral Board of the County of Cook*, 373 Ill. App. 3d 871, 874 (2007). Here, Candidate sufficiently described the Office because there was only one office to be filled by "the vacancy of the Honorable John T. Elsner" in "the 18th Judicial Circuit." Therefore, there was no basis for confusion.

¶ 29    Further, regarding whether petition sheets 59 through 80 were invalid because the sheets failed to designate the office as "resident judge" or "resident circuit judge," we agree with the Commission that such a "moniker" may not be required by statute in the Eighteenth Judicial Circuit, Du Page County. Objector cites no relevant authority requiring the word, "Resident," in the designation of the Office. In the alternative, if such a designation was required, Candidate substantially complied because the designation on Candidate's petition sheets adequately informed the voters of the specific office sought and did not lead to voter confusion.

¶ 30    In addition, even if the designation of office on petition sheets 59 through 80 rendered these sheets and their 272 signatures void, the result would be the same. Candidate collected a total of 966 signatures; thus, even without these 272 signatures, Candidate would still have 624 valid signatures, well beyond the 500 signatures required.

¶ 31                            C. Failure to Default Candidate

¶ 32    Finally, Objector argues that the Commission erred when it failed to default Candidate as a result of Candidate's and her attorney's conduct during the hearing. Objector contends that Candidate and her attorney violated the Commission's orders and directives when they communicated with witnesses. Objector argues that the Commission erred by failing to issue an order of default as a sanction against Candidate.

¶ 33    Electoral boards may adopt their own rules of procedure and rules of evidence. 10 ILCS 5/10-10 (West 2014). Relevant to this case, the Commission adopted a rule that, according to the Commission's order, provides that "failure to adhere to these rules or a directive of the

[Commission], or a hearing examiner of the [Commission] *** shall be a ground for default of the candidate."

¶ 34    As a reviewing court we must give deference to the Commission's application of its rules unless the Commission's decision was arbitrary or unreasonable.  See *Portman v. Department of Human Services*, 393 Ill. App. 3d 1084, 1092 (2009).  In this case, the Commission granted Objector's motion to exclude Candidate's witnesses and ordered the witnesses out of the hearing room.  The Commission later found that, although Candidate's violation of its exclusion order was "particularly egregious," barring Candidate's witnesses from testifying would "adequately preserve[] the integrity of the hearing process."  Thus, the Commission denied Objector's request to default Candidate.

¶ 35    The record indicates that during a break Candidate communicated with witnesses and Candidate's attorney communicated with Howard.  However, contrary to Objector's assertions, nothing in the record indicates that the Commission ordered or admonished Candidate or her attorney not to communicate with the witnesses.  Therefore, we cannot say that the Commission's decision to bar Candidate from calling her witnesses, rather than defaulting Candidate, was arbitrary or unreasonable.  At best, it was not an abuse of discretion.  At worst, it was unwarranted punishment for an unproven violation.

¶ 36    Objector complains that barring Candidate's witnesses denied Objector the opportunity to explore relevant testimony.  This argument is unavailing because nothing barred Objector from calling these witnesses on her behalf; the sanction was against Candidate and not Objector.  Additionally, the claim of relevancy is a red herring.  Any alleged testimony would not have been relevant to the objections raised.  Rather, the testimony would have been outside the four corners of the objections.

¶ 37                                    III. CONCLUSION

¶ 38 We affirm the trial court judgment that reversed the Commission's judgment.

¶ 39 Affirmed.