No. 2-20-0127
Order filed March 13, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CYNTHIA PILZ, | ) ) | Appeal from the Circuit Court of McHenry County. |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | No. 20-MR-19 |
| McHENRY COUNTY ELECTORAL BOARD OF COMMISSIONERS, JOSEPH J. TIRIO, NORMAN D. VINTON, ROBIN L. SHETLEY, and JUSTIN HANSEN, | ) ) ) ) ) | |
| Respondents | ) | Honorable |
| | ) | Philip G. Montgomery, |
| (Justin Hansen, Respondent-Appellee). | ) | Judge, Presiding. |

PRESIDING JUSTICE BIRKETT delivered the judgment of the court.
Justices Bridges and Brennan concurred in the judgment.

**ORDER**

¶ 1     *Held*: The candidate's designation of the office sought in his nominating papers substantially complied with the requirements of the Election Code; we therefore affirm the trial court's judgment confirming the Electoral Board.

¶ 2     Respondent, Justin M. Hansen (candidate), filed nominating papers to be a candidate of the Republican Party for nomination to the office of resident circuit court judge for the Third Subcircuit of the Twenty-second Judicial Circuit, McHenry County, in the March 17, 2020, primary election. Petitioner, Cynthia Pilz (objector), filed objections to the candidate's nominating

papers, and the McHenry County Electoral Board (Board) overruled her objections. On judicial review, the McHenry County circuit court denied the objector's petition for judicial review and confirmed the Board's judgment overruling her objections. On appeal, the objector argues that the Board erred in determining that the candidate substantially complied with sections 7-10 and 7-14a of the Illinois Election Code (Election Code) (10 ILCS 5/7-10, 7-14a (West 2018)) in accurately identifying the office sought. Because the candidate's nominating papers sufficiently identify the office sought so as to be free from any basis for confusion, the Board correctly overruled the objector's objection and we affirm.

¶ 3                                I. BACKGROUND

¶ 4      As is relevant to the March 17, 2020, primary election, three circuit judges in the McHenry County circuit court retired: Hon. Michael J. Caldwell effective December 31, 2017; Hon. Michael J. Sullivan effective December 31, 2018; and Hon. Sharon Prather effective July 12, 2019. Hon. David R. Gervais was appointed to the Caldwell vacancy, which was an at-large judgeship. The candidate was appointed to the Sullivan vacancy, which was a resident judgeship in the Third Subcircuit of the Twenty-Second Judicial Circuit. Hon. Mark R. Gerhardt was appointed to the Prather vacancy, which was a resident judgeship in the Fourth Subcircuit of the Twenty-Second Judicial Circuit.

¶ 5      In timely fashion, the candidate filed his nominating papers for the resident judgeship of the Third Subcircuit. In his statement of candidacy, in the blank provided for the office sought, the candidate described the office as "Judge of the Circuit Court, Hon. Michael J. Sullivan vacancy." In the blank for the district, the candidate inscribed, "22nd Judicial Circuit, 3rd

Subcircuit." Each of the sheets of the candidate's nominating petition contained the following heading:

"**JUDGE OF THE CIRCUIT COURT—SUBCIRCUIT—PRIMARY PETITION**

We, the undersigned, qualified primary electors residing within the district named below and members affiliated with the Republican Party, in the 3rd Subcircuit of the 22nd Judicial Circuit of the State of Illinois, do hereby petition that the following named person shall be a candidate of the Republican Party for the nomination for the office hereinafter specified, to be voted for at the Primary Election to be held on March 17th, 2020:

**Justin Hansen**

Who resides at [address], County of McHenry and State of Illinois, shall be a candidate of the Republican Party for the office of Judge of the Circuit Court to fill the vacancy of the Honorable Michael J. Sullivan, 3rd Subcircuit, for the 22nd Judicial Circuit of the State of Illinois."

¶ 6    In addition, each petition, after having 15 lines for the petitioners to provide their signatures, printed names, and addresses, provided a sworn statement for each circulator to fill out. The circulator provided his or her name, address and averred as follows:

"that I am 18 years of age or older (or 17 years of age and qualified to vote in Illinois); that I am a citizen of the United States; and that the signatures on this sheet were signed in my presence, not more than 90 days preceding the last day for filing of the petitions, and are genuine and that to the best of my knowledge and belief the persons so signing were, at the time of signing the petition, registered and qualified voters of the Republican Party,

residing in the 3rd Subcircuit of the 22nd Judicial circuit of the State of Illinois, and that their respective residences are correctly stated, as above set forth."

¶ 7    On December 9, 2019, the objector filed her verified objection to the candidate's nominating papers. The objector alleged that the candidate's nominating papers did not identify a valid vacant office and, as the office specified was invalid, the whole of the candidate's nominating papers was likewise invalid. The candidate filed a response and the objector filed a reply. Following the parties' briefing, the matter advanced to a December 18, 2019, hearing before the Board. The objector personally made a brief statement during the hearing on her objection to the candidacy of Donald R. Brewer, but it applied to and was applied by the Board to the hearing on the candidate's nominating papers. The objector asserted that she believed that the candidate had made a serious error in failing to correctly identify the office for which he was seeking nomination, and she asserted that she would not have objected to "an administrative error, an error such as stapling."

¶ 8    On January 3, 2020, the Board issued its ruling. The Board determined that the candidate had consistently identified the office sought in his nominating papers. With that said, however, the candidate had not utilized the exact name of that office. Nevertheless, the Board held that there was but "one judicial vacancy for the Office of Circuit Court Judge for Subcircuit 3." The Board also determined that the Chief Justice's Certified List of Judicial Vacancies expressly stated that the origin of the office "emanat[ed] from the retirement of Judge Sullivan." There was, therefore "some basis and recognition of the link between the specific vacancy and the name of Judge Sullivan." The Board determined that substantial compliance with the statutory requirements was the standard and, "even though the term, 'Judgeship A' was not included in the office description,

it was clear that the Candidate was seeking to run for the one vacancy in Subcircuit 3. As a result, there was no reasonable basis to create confusion among voters." The Board overruled the objection.

¶ 9    On January 7, 2020, the objector petitioned for judicial review of the Board's decision. On January 17, 2020, the candidate moved to dismiss the petition for judicial review because it had not been served upon him in his private capacity, but rather, service had been effected at his employment (as the appointed resident circuit judge for additional judgeship A in the Third Subcircuit of the Twenty-second Judicial District) in his official capacity. The objector eventually filed a memorandum in support of her petition for judicial review outside of the original briefing schedule prompting the candidate's motion to strike due to the memorandum's tardiness. Following the briefing of the pending issues, on February 11, 2020, the trial court heard arguments.

¶ 10    The same day, February 11, 2020, the trial court issued its judgment. The trial court denied the candidate's motion to dismiss. After moving to the merits, the trial court confirmed the Board's judgment and denied the petition for judicial review, echoing the Board's reasoning and holding that the candidate's nominating papers did not create a basis for confusion. On February 13, 2020, the objector filed a timely notice of appeal. On February 20, 2020, we granted the objector's emergency motion to expedite the instant appeal under Illinois Supreme Court Rule 311(b) (eff. July 18, 2018).

¶ 11                                II. ANALYSIS

¶ 12    On appeal, the objector advances the solitary contention that the candidate failed to indicate an actual and existing office to which he sought nomination. The objector argues that the vacant office was actually additional judgeship A, whereas the candidate listed the office variously as

"Judge of the Circuit Court to fill the vacancy of the Honorable Michael J. Sullivan" or "Judge of the Circuit Court, Hon. Michael J. Sullivan vacancy." The objector reasons that, because the Election Code requires the prospective candidate to identify the office sought, the candidate's erroneous identification of the office must result in his disqualification and her objection must be sustained.

¶ 13                                 A. Jurisdiction

¶ 14    As an initial matter, we note that the candidate challenges our jurisdiction on the basis that the objector effectuated service upon him in his professional capacity rather than his personal capacity. Specifically, the candidate argues that service was faulty because the objector sent a copy of the objection to his place of employment rather than his home. Section 10-10.1(a) of the Election Code (10 ILCS 5/10-10.1 (West 2018)) requires that the "party seeking judicial review must file a petition with the clerk of the court and must serve a copy of the petition upon the *** other parties to the proceeding by registered or certified mail within 5 days after service of the decision of the electoral board." The provision does not require that the certified or registered mail be sent to the abode of the other parties. The candidate cites *Hough v. Will County Board of Elections*, 338 Ill. App. 3d 1092, 1093-94 (2003), to no avail. In *Hough*, the court determined that it lacked jurisdiction because the other parties were not served; rather the attorney for the other parties was served. *Id.* at 1094. Here, service was effectuated on the candidate via certified mail. Thus, the candidate was served in compliance with the Election Code and jurisdiction in the circuit court was properly established.

¶ 15    The candidate also argues that the petition for judicial review did not provide "a brief statement of the reasons why the decision of the board should be reversed" (10 ILCS 5/10-10.1(a)

(West 2018)). The petition, contrary to the candidate's contention, contained an adequate statement of "the reasons why the decision of the board should be reversed." Accordingly, we reject the candidate's jurisdictional challenge. We now turn to the objector's contention on appeal.

¶ 16                                 B. Governing Principles

¶ 17     This case comes before us from the judicial review of the Board's decision on the objector's objection to the candidate's nominating papers. Judicial review proceedings under the Election Code are in the nature of administrative review. *Goodman v. Ward*, 241 Ill. 2d 398, 405 (2011). When such proceedings are appealed, the appellate court reviews the electoral board's decision, not the circuit court's decision. *Id.* As in any administrative-review case, our standard of review depends on what is in dispute: the facts, the law, or a mixed question of fact and law. *Id.* Factual issues will not be disturbed unless they are against the manifest weight of the evidence. *Cinkus v. Village of Stickney*, 228 Ill. 2d 200, 210 (2008). Issues of law are reviewed *de novo*. *Id.* Issues of mixed questions of fact and law (*i.e.*, where the historical facts and applicable law are undisputed, but the issue involves the application of the law to the facts) are reviewed under the clearly erroneous standard. *Id.*

¶ 18     This case presents an issue of law. The issue of whether the candidate's nominating papers satisfied the statutory requirements involves the interpretation of the relevant statutory provisions, and it is well established that statutory interpretation presents a question of law. *Brunton v. Kruger*, 2015 IL 117663, ¶ 24. We note that cases diverge in the standard of review to be applied to the issue of whether a candidate's nominating papers satisfy the statutory requirements. *Zurek v. Cook County Officers Electoral Board*, 2014 IL App (1st) 140446, ¶ 11 (*de novo* review of the issue of whether the candidate's nominating papers satisfied the Election Code); *Salgado v.*

*Marquez*, 356 Ill. App. 3d 1072, 1075 (2005) (same); *Samuelson v. Cook County Officers Electoral Board*, 2012 IL App (1st) 120581, ¶ 11 (application of the law to nominating papers merits review under the clearly erroneous standard). Regardless, however, of the standard used, the result in this case is the same.

¶ 19    Section 7-10 of the Election Code governs the form and content of a candidate's nominating papers. In order to be placed on the primary ballot, a candidate must submit nominating petitions in the requisite form containing the required number of signatures. 10 ILCS 5/7-10 (West 2018).

> "Each sheet of the petition other than the statement of candidacy and candidate's statement shall be of uniform size and shall contain above the space for signatures an appropriate heading giving the information as to name of candidate or candidates, in whose behalf such petition is signed; the office, the political party represented and place of residence; and the heading of each sheet shall be the same." *Id.*

¶ 20    Our supreme court has held that the purpose of section 7-10 of the Election Code "is to provide an orderly procedure whereby qualified persons seeking public office may enter primary elections." *Lewis v. Dunne*, 63 Ill. 2d 48, 53 (1976). To that end, the nominating papers are to be considered altogether. *Id.* at 53-54. Further, only substantial, rather than strict, compliance with the Election Code is required, and the nominating papers will satisfy the requirement of substantial compliance if there is "no basis for confusion as to the office for which the nominating papers were filed." *Id.* at 54. With these principles in mind, we turn to the objector's contentions.

¶ 21                    C. Identification of the Office Sought

¶ 22 The objector argues that the candidate so misidentified the office sought that the petition-signers would have been hopelessly confused. As a result, the candidate's nominating papers did not substantially comply with the Election Code and her objection should have been sustained by the Board. We disagree.

¶ 23 The objector starts from the assertion that at least two similar offices were available in the relevant voting district. Section 7-14a of the Election Code provides that:

"Where there are 2 or more additional judgeships created in any judicial district or circuit, to be filled at the same general election and to be elected from the same district, circuit or county, each such additional judgeship shall be designated by the State Board of Elections by a letter of the alphabet beginning with the letter "A". Such designation shall be made no later than one day prior to the first day for filing of nominating petitions for such additional judgeships. Each candidate for such additional judgeship shall specify to the State Board of Elections upon the filing of his nominating petitions the judgeship for which he seeks nomination. Such candidates shall be nominated and elected for the judgeships which they have designated." 10 ILCS 5/7-14a (West 2018).

¶ 24 From this, the objector determines that the actual name of the office sought by the candidate is "Additional Judgeship A." Because the candidate did not use this precise formulation, he misidentified the office he was seeking. In turn, this led to confusion as there were two judicial office vacancies within the voting district. The objector concludes that, as a result, her objection should have been sustained.

¶ 25 The objector correctly notes that the proper denomination for the office sought is "Additional Judgeship A." However, even though the candidate did not use this terminology,

because the governing standard is substantial compliance, and because substantial compliance in this regard focuses on whether there is no basis for confusion as to the office sought, if the candidate can demonstrate substantial compliance, *i.e.*, no basis for confusion, then the improper nomenclature of the office will not be fatal.

¶ 26    In the first instance, the Illinois Constitution provides that the position sought by the candidate was entitled "circuit judge." Ill. Const 1970, art. 6, ¶ 7. In his candidate's statement and nominating petitions, the candidate indicated that the office sought was "Judge of the Circuit Court." As this comports with the constitutional designation of the judicial position he sought, we cannot say that his alternate form of identification was not also a correct denomination. This conclusion is further supported by the order of appointment as the candidate was appointed to fill the vacancy created by Judge Sullivan's retirement. Our supreme court ordered that the candidate be appointed to the position of "Circuit Judge of the Twenty-second Judicial Circuit, Third Subcircuit." Thus, the candidate was actually appointed to the position of circuit judge, and this is also identified as the office to which he was seeking nomination, notwithstanding how the position may be portrayed on a ballot. Therefore, contrary to the objector's contention, we cannot say that the office sought was nonexistent.

¶ 27    Next, we note, as did the Board, that the certification of judicial vacancies labeled the office as Resident Judgeship A for the Third Subcircuit of the Twenty-second Judicial Circuit. In addition, the certification identified the "Judicial Officer who Held Position" as the Honorable Michael J. Sullivan, who retired effective December 31, 2018. It is undisputed that the candidate was seeking the office of circuit judge. While he did not employ the term "Judgeship A," he did include all of the other information appearing in the certification. The omission of the title

"Judgeship A" in light of all the information taken from the certification is *de minimis*, especially since the office was properly identified as the judgeship for the Third Subcircuit. Including the information about the Sullivan vacancy did not create confusion; rather, as the information was included in the certification, it helped to more specifically identify the office sought and, if anything, decreased any basis for confusion.

¶ 28 Finally, we note that several cases strongly support our reasoning. First, in *Lewis*, the candidate filed a statement of candidacy that described the office he was seeking as " 'Judge of the Appellate Court of Illinois, First Judicial District,' " while his nominating petition described the office as " 'Judge of the Appellate Court of Illinois, First Judicial District, to fill the vacancy created by the retirement of the Honorable Robert E. English.' " *Lewis*, 63 Ill. 2d at 49-50. The court held that the nominating papers, considered altogether, clearly stated the office sought, notwithstanding the variance between the statement of candidacy and the nominating petition. *Id.* at 53. The court concluded that the candidate had substantially complied with the provisions of the Election Code. *Id.* In this case, the candidate identified the office by its constitutional title and included all of the relevant information from the Chief Justice's certification of judicial vacancies. The statement of candidacy and the nominating petition were effectively the same regarding the office sought and provided exactly the same information. *Lewis*, therefore, strongly supports our reasoning because the information included in the candidate's nominating papers clearly identified the office sought and there was no basis for confusion arising from the candidate's identification of the office sought.

¶ 29 In *Wiesner v. Brennan*, 2016 IL App (2d) 160115, ¶ 25, the sheets of the candidate's nominating petition were not uniform in their designation of the office sought, with sheets 1

through 58 designating the office as " 'Resident Circuit Court Judge to fill the vacancy of the Honorable John T. Elsner, for the 18th Judicial Circuit,' " and sheets 59 through 80 designating the office as " 'Judge of the Circuit Court to fill the vacancy of the Honorable John T. Elsner, for the 18th Judicial Circuit.' " The objector challenged sheets 59 through 80 because they contained an incorrect office and varied from sheets 1 through 58. *Id.* This court held that all of the nominating petition sheets specified the office (circuit judge) and did not lead to any voter confusion, because if the nominating papers describe only one office, there can be no basis for confusion. *Id.* ¶ 28. We concluded that, "because there was only one office to be filled by 'the vacancy of the Honorable John T. Elsner' in 'the 18th Judicial Circuit,' *** there was no basis for confusion." *Id.* The same reasoning applies here. There is only one office available in the Third Subcircuit of the Twenty-second Judicial Circuit that was vacated by the Honorable Michael J. Sullivan. The candidate's nominating papers described only a single office, that of Judge Sullivan's vacant resident circuit judgeship in the Third Subcircuit; moreover, all of the sheets of the candidate's nominating petitions were uniform in designating that precise office sought, and there is no basis for confusion.

¶ 30 In *Stevenson v. County Officers Electoral Board*, 58 Ill. App. 3d 24, 26 (1978), the candidate used an outmoded designation for the office sought. In his nominating papers, he stated he was seeking the office of " 'Superintendent of an Educational Service Region,' " but the title of the office changed to " 'regional superintendent.' " *Id.* The court held that the use of the former title and not the current statutory designation did not cause a question as to the office the candidate was seeking and, therefore, the candidate had substantially complied with the Election Code. *Id.* at 27. In this case, the candidate clearly indicated that he was seeking the resident judgeship vacant

in the Third Subcircuit of the Twenty-second Judicial Circuit. The candidate's designation here is for an actual position; arguably, in *Stevenson*, the candidate's use of the former designation meant that he was seeking nomination to an office that no longer existed. If the use of an expired designation that no longer applied did not create a basis for confusion, then in this case, the candidate's inclusion of an existing office, the geographical designation, and the name of the previously elected officer likewise does not create a reasonable basis for confusion and is substantially compliant with the Election Code.

¶ 31    The objector tries to rationalize her objection with *Stevenson*'s holding by explaining that, in this case, the office is unequivocally Judgeship A, and is not a "minor error" of seeking an office by a name that is no longer current. We fail to see any meaningful difference, especially as, just as in *Stevenson*, the office sought clearly existed and the candidate's designation provided no reasonable basis for confusion among the electorate.

¶ 32    The objector relies on *Salgado*, 356 Ill. App. 3d 1072, for the proposition that when a judicial candidate misidentifies the office by failing to use specifically prescribed language, it is a failure on par with failing to identify any office sought in any of the nominating papers. The objector asserts that the candidate's "failure to identify a certified office is akin to leaving the 'Office' line blank" in his nominating papers. *Salgado* is distinguishable because there, "[t]here [was] no dispute that Marquez did not list the office he sought on any of his nominating petitions." *Id.* at 1075. This court held that, by omitting completely the office sought from the sheets of the nominating petition, the candidate in *Salgado* frustrated the purpose of the nominating petition which was to demonstrate the candidate's initiative and some minimum appeal to eligible voters. *Id.* at 1079. Here, the candidate stated consistently in all of the sheets of his nominating petition

that he was seeking the office of "Judge of the Circuit Court to fill the vacancy of the Honorable Michael J. Sullivan, 3rd Subcircuit, for the 22nd Judicial Circuit." Thus, the candidate identified the office, its electoral locus, the previously elected officeholder, and he demonstrated his initiative and some minimum appeal to the eligible voters of the relevant electoral locus. In other words, the candidate provided what was missing in *Salgado*, and this distinguishes *Salgado* from our case.

¶ 33 The objector challenges various details of our analysis. The objector asserts that, for us to even consider whether the candidate has substantially complied with the Election Code, the essential hurdle is whether the office specified in the nominating papers can only refer to one possible vacancy in that district so there is no basis for confusion. *Pascente v. County Officers Electoral Board of the County of* Cook, 373 Ill. App. 3d 871, 874 (2007). This assertion overstates *Pascente*'s holding. In that case, the court measured the objection against the standard of "a candidate is entitled to have his name placed on the ballot if 'there was no basis for confusion as to the office for which the nominating papers were filed.' " *Id.* at 873 (quoting *Lewis*, 63 Ill. 2d at 53). The court did not make the use of substantial-compliance analysis contingent on any condition precedent; rather, substantial compliance is demonstrated by showing that no confusion arises, and one of the ways this can be done is to show that the nominating papers refer to only one possible vacancy. In *Pascente*, the candidate identified the electoral locus along with the position and this demonstrated that the nominating papers referred to only one possible vacancy. *Id.* at 873-875. Here, the candidate identified the single vacancy occurring in the judiciary in the Third Subcircuit, which fully comports with *Pascente*'s reasoning.

¶ 34 The objector next contends that the no-basis-for-confusion standard must be viewed as whether the nominating papers submitted by the candidate could refer to more than one vacancy

in the "district." We agree with this statement. See *Wiesner*, 2016 IL App (2d) 160115, ¶ 27 ("the nomination papers as a whole must not create a basis for confusion as to the office sought"). The objector's argument focuses on "district." The objector argues that, by identifying the office as that of circuit judge to fill the vacancy of the Honorable Michael J. Sullivan, Third Subcircuit, Twenty-second Judicial Circuit, the candidate created a basis for confusion. Specifically, the objector contends that "district" is ambiguous in the Election Code because it is used in conjunction with voting area as well as in reference to a Judicial District in defining the number of needed signatures for a nominating petition. In addition, the objector argues that circuit and subcircuit are undefined in the Election Code. Finally, the objector contends that using the term "vacancy" in the identification of the office implies that it was for the at-large judicial position.

¶ 35    The Election Code defines "district" to mean:

> "any area which votes as a unit for the election of any officer, other than the State or a unit of local government or school district, and includes, but is not limited to, legislative, congressional and judicial districts, judicial circuits, county board districts, municipal and sanitary district wards, school board districts, and precincts." 10 ILCS 5/1-3(14) (West 2018).

According to the objector, the Election Code does not define a "subcircuit" as a "district." Instead, "judicial district" is referenced in section 7-10(h), but only in the context of the number of signatures needed by a candidate for "judicial office:"

> "*If a candidate seeks to run for judicial office in a circuit or subcircuit*, then the candidate's petition for nomination must contain the number of signatures equal to 0.25% of the number of votes cast for the judicial candidate of his or her political party who received

the highest number of votes at the last general election at which a judicial officer from the same circuit or subcircuit was regularly scheduled to be elected, *but in no event less than 1,000 signatures in circuits and subcircuits located in the First Judicial District or 500 signatures in every other Judicial District*. (Emphases added.) 10 ILCS 5/7-10(h) (West 2018).

The objector concludes, by focusing on the emphasized language, that the relevant "district" (*i.e.*, "area which votes as a unit for the election" of an elected position) encompasses the entirety of the Twenty-second Judicial Circuit. From this conclusion about the voting district, the objector then reasons that, because there are three vacant judicial positions within the Twenty-second Judicial Circuit, the candidate's failure to accurately identify the position he sought created a basis for confusion. The objector further contends that, even if the relevant voting district were confined to the Third Subcircuit, there are still two judicial positions that will be voted on, and the candidate's failure to accurately identify the position he sought still created a basis for confusion. Under either scenario, we disagree.

¶ 36 The objector's argument requires us to consider the meaning of the relevant provisions of the Election Code. The cardinal principle of construing the meaning of statutory provisions, to which all other rules of statutory interpretation are subordinate, is to ascertain and give effect to the legislature's intent. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004). The plain language of the statute is the best indicator of the legislature's intent, and where that language is clear and unambiguous, it will be given effect without employing other aids of statutory construction. *Id.* at 35.

¶ 37　We further read the statute as a whole and not as isolated provisions. *Id.* at 37. In our interpretive endeavor, we also consider the stated purpose, if any, of the statute as well as the judicial pronouncements of that purpose. *Id.* We also consider the statute as a whole in order in order to determine what it was primarily designed to accomplish. *Id.*

¶ 38　The voting district for the resident judgeship associated with the Third Subcircuit is obviously the Third Subcircuit itself. No other voters may participate in electing the resident circuit judge associated with the Third Subcircuit. Likewise, the voting district for the at-large judgeship associated with the Twenty-second Judicial Circuit is the entirety of the Twenty-second Judicial Circuit. The rub occurs because the voting districts overlap; all of the eligible voters who reside in the Third Subcircuit may also participate in the election of the at-large candidate for the Twenty-second Judicial Circuit, but only the subset of eligible voters who reside in both the Twenty-second Judicial Circuit *and* the Third Subcircuit may participate in the election of the resident judgeship associated with the Third Subcircuit. However, the districts remain distinct as well as the offices. It is therefore mistaken to conflate the overlap of voting districts with the creation of a basis for confusion where the offices themselves do not overlap and are otherwise clearly defined.

¶ 39　The objector seeks to divine confusion arising from the purportedly indiscriminate use of circuit, subcircuit, and district in section 7-10(h). According to the objector, the relevant language is "[i]f a candidate seeks to run for judicial office in a circuit or subcircuit, then the candidate's petition for nomination must contain *** 500 signatures in every other Judicial District." 10 ILCS 5/7-10(h) (West 2018). The objector reasons that, "even where a subcircuit is specifically mentioned, it is still referred to as a subdivision within a 'Judicial District' as the more general

area." The objector then concludes that, "[c]onsistent with this language, the relevant 'district' here is the 22nd Judicial Circuit."

¶ 40 The objector's reasoning does not track, and section 7-10(h) is, and remains, clear and unambiguous. It is clear that the term "Judicial District" in section 7-10(h) refers to the appellate districts of the State. Section 7-10(h) sets the minimum number of signatures necessary for the nominating petition and this number is the same whether the candidate is running "for judicial office in a circuit or subcircuit," and is dependent on whether the position resides in the First Judicial District or any or another Judicial District. There is no suggestion from the provision that the relevant voting district for the office sought would not correspond with the geographic territory of the circuit or subcircuit. Thus, the objector's conclusion that the relevant voting district, informed by section 7-10(h), simply does not follow. The relevant voting district is the subcircuit itself.

¶ 41 The objector notes, more relevantly, that the at-large judgeship was denominated as the vacancy of the Honorable Michael T. Caldwell, while the Subcircuit 3 judgeship was denominated "Judgeship A." According to the objector, when the candidate indicated that the office sought was the vacancy of the Honorable Michael J. Sullivan, this was confusing because "vacancy" refers to an at-large judgeship, so there was a basis for confusion. We disagree.

¶ 42 The objector's argument turns on ignoring all of the other information present in the nominating papers. The candidate clearly indicated that he was seeking the office of circuit judge in the Third Subcircuit. The candidate also included information about the previously elected judge who held the position and whose retirement left it vacant. The use of the term "vacancy" does not transform the nominating papers into papers for the at-large vacancy, particularly where

the candidate inscribed the name of the previously elected resident circuit judge of the Third Subcircuit as well as the location of the position in the Third Subcircuit. Where there is one position available in the district and where the nominating papers describe only one possible vacancy in the district, there is no basis for confusion. *Wiesner*, 2016 IL App (2d) 160115, ¶ 28. We reject this argument.

¶ 43    Next, the objector argues that the misidentification of the office sought rendered the petitions ineffective in their purpose of demonstrating that the candidate had the necessary minimum level of appeal to the eligible voters. In *Salgado*, 356 Ill. App. 3d at 1079, this court held that the purpose of nominating petitions "is to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters." However, the minimal appeal component of the purpose of nominating petitions can be shown "only by reference to a particular type of office." The objector argues that the misidentification of the office sought was tantamount to including no office on the nominating petitions and therefore *Salgado* controls. We disagree.

¶ 44    The candidate here included the office sought: circuit judge. This is indeed the general type of office sought as well, a judgeship. Accordingly, the petitions were sufficient to demonstrate the minimal appeal component as they revealed the candidate was seeking the office of circuit judge. The objector erases the substance of the office sought and replaces it with the empty talisman of a label as if the label itself is the end-all and be-all. We reject petitioner's argument.

¶ 45    The objector relies on *Zapolsky v. Cook County Officers Electoral Board*, 296 Ill. App. 3d 731, 734 (1998),[1] in which the court noted that the candidate's nominating petition did not include a reference to the specific office sought, and this frustrated the signatories' ability to ascertain the specific vacancy sought by the candidate so that each signatory could make an informed decision to sign the candidate's petition or to support a different candidate for the same vacancy. The objector's reliance on *Zapolsky* is misplaced. In that case, it was uncontroverted that there were numerous vacancies for the type of office sought by the candidate. *Id.* It was also uncontroverted that the sheets of the nominating petition did not specify the vacancy sought or inform the signatories of the specific vacancy sought. *Id.* at 734-35. Here, by contrast, there was but a single vacancy in the Third Subcircuit. The sheets of the candidate's nominating petition adequately described the vacancy sought and there is no question that the signatories were thus informed about the specific vacancy. *Zapolsky* is therefore unavailing.

¶ 46    The objector rejoins that "judge" does not refer to a specific office. The objector contends that "judge" is an equally valid identification for "any one of the three open judicial vacancies." While true, the objector ignores the context of the appearance of "judge" on the nominating papers

---

[1] We note that a central holding of *Zapolsky* was that the purpose of the nominating petition was to expand the informed participation of members of the respective parties in their primary election. *Zapolsky*, 296 Ill. App. 3d at 734. In *Salgado*, we noted that we disagreed with the holding, determining that it was rather to reduce the electoral process to manageable proportions and to demonstrates the candidates' initiative and a minimum level of electoral appeal. *Salgado*, 356 Ill. App. 3d at 1078.

and only views it in isolation. Nevertheless, to support her contention, the objector cites section 7-14a of the Election Code (10 ILCS 5/7-14a (West 2018)) and *Johnson v. State Board of Elections*, 57 Ill. 2d 205 (1974), for the proposition that a candidate must designate the specific office sought. However, the objector's argument is untenably narrow if, as the objector does, the focus is exclusively on the manner in which the office sought is designated. To illustrate, according to the objector, the correct designation for the office sought is Judgeship A. However, there is another Judgeship A available in the Fourth Subcircuit. Thus, for "Judgeship A" to have any specificity, the entirety of the nominating papers must be considered. If the entirety is considered, then the ambiguity vanishes, because one office is Judgeship A in the Third Subcircuit of the Twenty-second Judicial Circuit, and the other is Judgeship A in the Fourth Subcircuit of the Twenty-second Judicial Circuit. Similarly, the candidate here stated that he sought the office of circuit judge in the Third Subcircuit of the Twenty-second Judicial Circuit. This designation sufficiently describes the office sought and substantially complies with the requisites of the Election Code.

¶ 47    The objector insists that the Election Code requires more than "Judge" to designate the office. As we have seen, even accepting the objector's contention that "Judgeship A" is the only acceptable designation, the bare name, "Judgeship A," is insufficient and would not comply with the requirement of the Election Code that the candidate specifically designate the office sought. 10 ILCS 5/7-14a (West 2018) ("Each candidate for such additional judgeship shall specify to the State Board of Elections *** the judgeship for which he seeks nomination. Such candidates shall be nominated and elected for the judgeships which they have designated").

¶ 48    The objector maintains that, if the designation "Judge" were deemed to be a substantially compliant identification of the office sought, it would "render[] superfluous the [Election] Code's provisions as to specific identification of judgeships." Again, employing the objector's logic and focus, the designation of "Judgeship A" without more would not comply with the specific-identification requirement. Expanding the information considered to include "Third Subcircuit" makes either designation, "Circuit Judge" or "Judgeship A," compliant. Moreover, we see no significant difference between "Judgeship A in the Third Subcircuit of the Twenty-second Judicial Circuit" and "Circuit Judge in the Third Subcircuit of the Twenty-second Judicial Circuit."

¶ 49    In her reply brief, the objector tightens the argument and urges us to view the requirement in section 7-10 of the Election Code that the candidate identify the office sought in light of the naming convention for the office sought in section 7-14a. The objector reminds us that, in construing a statute, the court must give effect to all of the provisions, especially where statutes relate to the same subject matter. See *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458-59 (2002) (the "court presumes that the legislature intended that two or more statutes which relate to the same subject are to be read harmoniously so that no provisions are rendered inoperative"). However, the issue is not strict compliance with the section 7-14a naming convention, but substantial compliance overall. *Lewis*, 63 Ill. 2d at 53. As we have noted, there is no material difference between the designation "Judgeship A" and "Circuit Judge" when considered with the necessary information "in the Third Subcircuit of the Twenty-second Judicial Circuit." Thus, there is substantial compliance, and the objector's argument is unavailing.

¶ 50                                III. CONCLUSION

¶ 51    For the foregoing reasons, the candidate's nominating papers substantially comply with the

Election Code and the judgment of the circuit court of McHenry County is affirmed.

¶ 52    Affirmed.