2025 IL App (1st) 240437-U
No. 1-24-0437

FIRST DIVISION
August 11, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| STEVEN DANIEL ANDERSON, CHARLES J. HOLLEY, JACK L. HICKMAN, RALPH E. CINTRON, and DARRYL P. BAKER, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Petitioners-Appellees, | ) ) | No. 2024 COEL 000013 |
| v. | ) ) | |
| DONALD J. TRUMP, | ) ) | The Honorable Tracie R. Porter, |
| Respondent-Appellant, | ) ) | Judge Presiding. |
| and | ) ) | |
| The ILLINOIS STATE BOARD OF ELECTIONS, sitting as the State Officers Electoral Board, and its members CASSANDRA B. WATSON, LAURA K. DONAHUE, JENNIFER M. BALLARD CROFT, CRISTINA D. CRAY, TONYA L. GENOVESE, CATHERINE S. MCCRORY, RICK S. TERVIN, SR and JACK VRETT, | ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

*Held*: The United States Supreme Court has held that states lack authority to decide whether a candidate is disqualified pursuant to section 3 of the Fourteenth Amendment to the United States Constitution. Thus, the Election Board decision addressing the merits of the petitioners-appellees' objection to respondent-appellant's candidacy is void and must be vacated, along with the subsequent circuit court order. In any event, the appeal is moot and the public interest exception does not apply.

¶ 1 Petitioners-appellees filed an objection to the candidacy of respondent-appellant Donald J. Trump in the March 2024 presidential primary election, alleging he was disqualified by section 3 of the Fourteenth Amendment to the United States Constitution (Section 3). U.S. Const. amend XIV, § 3. After the Illinois State Board of Elections (Board) overruled the objection, the petitioners sought judicial review in the circuit court, which reversed the Board and found that Trump was disqualified from appearing on Illinois ballots. Trump appealed the circuit court's decision. Shortly thereafter, the United States Supreme Court held that states lack authority to decide Section 3 objections to candidates seeking federal office. *Trump v. Anderson*, 601 U.S. 100 (2024).

¶ 2 For the following reasons, we find that the Board lacked jurisdiction to decide the Section 3 objection, and thus we vacate the Board's decision and the circuit court's decision. We also remand to the circuit court with directions to (1) dismiss the petitioners' petition for judicial review and (2) direct the Board to dismiss the petitioners' objection.

¶ 3 BACKGROUND

¶ 4 In January 2024, Trump filed nomination papers with the Board to appear on Illinois ballots in the March 2024 primary election as a candidate for President of the United States. Pursuant to section 7-10 of the Illinois Election Code, he included a candidate statement certifying that he was "legally qualified" to hold that office. 10 ILCS 5/7-10 (West 2024).

¶ 5          Shortly thereafter, the petitioners-appellees herein filed an objection to Trump's candidacy with the Board. In the objection, the petitioners averred that Trump was disqualified to run for president of the United States by Section 3, which provides:

> "No person shall *** hold any office, civil or military, under the United States *** who, having previously taken an oath, as a member of Congress, or as an officer of the United States, *** to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof." U.S. Const. amend XIV, § 3.

¶ 6          According to the objection, Trump was disqualified under Section 3 due to his role in efforts to "overthrow the results of the 2020 [presidential] election", including the attack on the United States Capitol on January 6, 2021, which petitioners characterized as an "insurrection." The objection noted that a decision by Colorado's supreme court had sustained similar findings upon a Section 3 challenge to Trump's candidacy in that state. See *Anderson v. Griswold*, 2023 CO 63 (Colo. Dec. 19, 2023) (rev'd by *Trump v. Anderson*, 601 U.S. 100 (2024)).

¶ 7          The petitioners claimed that under Illinois law, Trump's "nomination papers are not valid because when he swore in his Statement of Candidacy that he is 'qualified' for the office of the presidency as required by 10 ILCS 5/7-10, he did so falsely." See 10 ILCS 5/7-10 (West 2024) (requiring nomination papers to be accompanied by a candidate's statement that the candidate is "qualified for the office specified"). Section 7-10 provides an example "Statement of Candidacy" form, including the statement that "I am legally qualified *** to hold such office." *Id*.

¶ 8          Trump moved to dismiss the objection, and petitioners filed a motion for summary judgment. The Board assigned a hearing officer (retired Judge Clark Erickson) to assess the

motions. Following briefing and a hearing, Judge Erickson issued a report in which he recommended that the Board grant Trump's motion to dismiss because Illinois Supreme Court precedent "prohibit[s] the Election Board from addressing issues involving constitutional analysis." Alternatively, Judge Erickson recommended that if the Board did not grant Trump's motion to dismiss, it should find that Trump had engaged in an "insurrection" and should be removed from the primary ballot pursuant to Section 3.

¶ 9 The Board's general counsel issued a recommendation in which it concurred with Judge Erickson's recommendation to overrule the petitioners' objection to Trump's candidacy. Notably, the general counsel suggested that the Board resolve the objection "under Illinois law without reaching the constitutional question under Section 3" by finding that Trump's statement of candidacy "is not knowingly false and therefore does not violate Section 7-10" of the Election Code. Thus, the Board's general counsel reasoned that regardless of whether Trump was disqualified under Section 3, "his sworn statement on his Statement of Candidacy that he is 'legally qualified' for office is not knowingly false, and therefore, does not violate Section 7-10 and cannot invalidate his nomination papers."

¶ 10 The Board Grants Trump's Motion to Dismiss Petitioners' Objection

¶ 11 On January 30, 2024, the Board issued a decision in which it "adopt[ed] the conclusion of law and recommendations of the General Counsel" and determined that petitioners had not met their burden to prove that Trump's statement of candidacy was "falsely sworn in violation of Section 7-10 of the Election Code." In the alternative, the Board found that, pursuant to Illinois Supreme Court precedent, "the Board lacks jurisdiction to perform the constitutional analysis necessary" to determine whether Section 3 barred Trump from appearing on the ballot. On these

grounds, the Board found that Trump's nomination papers were valid and granted Trump's motion to dismiss the objection.

¶ 12                    On Judicial Review, the Circuit Court Finds Trump Disqualified Under Section 3

¶ 13        Petitioners sought judicial review of the Board's decision in the circuit court of Cook County pursuant to section 10-10.1 of the Election Code. 10 ILCS 5/10-10.1(a) (West 2024) ("a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the elector board was held.")

¶ 14        Following briefing and a hearing, on February 28, 2024, the circuit court issued a "Memorandum of Judgment and Order" that reversed the Board's decision. In so doing, the court evaluated the merits of petitioners' challenge to Trump's candidacy based on Section 3 of the fourteenth amendment. Relying heavily on the Colorado Supreme Court's decision in *Anderson v. Griswold*, it found that Trump was disqualified "based on engaging in insurrection on January 6, 2021, and his name should be removed from the ballot." In addition, the circuit court found that Trump was disqualified under section 7-10 of the Election Code, concluding that Trump "falsely swore in his Statement of Candidacy *** that he was 'legally qualified' for the office he sought."

¶ 15        The circuit court's order directed the removal of Trump's name from the ballot. However, the court specified that the order was stayed pending an anticipated appeal, and that it was "further stayed if the United States Supreme Court in *Anderson v. Griswold* enters a decision inconsistent with this Order."

¶ 16        On the same day the circuit court issued its order, Trump filed a notice of appeal to this court.

¶ 17                    The United States Supreme Court decides *Trump v. Anderson*

¶ 18        Less than one week later, on March 4, 2024, the United States Supreme Court issued its decision in *Trump v. Anderson*, 601 U.S. 100, which reversed the Colorado Supreme Court's judgment in *Anderson v. Griswold.* In so doing, it held that "States have no power under the Constitution to enforce Section 3 with respect to federal offices, especially the Presidency." *Trump*, 601 U.S. at 110. Rather, "responsibility for enforcing Section 3 against federal officeholders and candidates rests with Congress and not the States." *Id*. at 117.

¶ 19                              Trump's Motion to Vacate

¶ 20        On March 12, 2024, Trump filed in this court a motion to vacate the circuit court's decision, in light of the United States Supreme Court's decision in *Trump*. In it, he argued that the U.S. Supreme Court's conclusion that "states have no authority to consider Section Three challenges" resolved this case in its entirety. Trump's motion asked that this court "summarily vacate" the circuit court's judgment and "remand with instruction to dismiss" the petitioners' objection "without further action."

¶ 21        The petitioners filed an objection to the motion to vacate. Petitioners argued that although the "circuit court must reconsider its decision in light of" the U.S. Supreme Court's decision in *Trump*, it would be improper for this court to "summarily vacate" the circuit court decision. Petitioners noted that *Trump* had not addressed matters of Illinois law discussed in the circuit court decision, including whether a candidate must *knowingly* make a false statement to be in violation of section 7-10 of the Election Code. Petitioners thus urged that the proper course of action was "not to summarily vacate the circuit court's order but to remand for reconsideration consistent with" the United States Supreme Court's decision.

¶ 22        On March 27, 2024, this court entered an order granting the motion to vacate in part and denying it in part. The order specified that the circuit court's February 24, 2024 judgment was

"reversed and vacated" in light of the United States Supreme Court's decision in *Trump*. However, this court "denie[d] [Trump's] request to remand with instructions to dismiss without further action."

¶ 23    This court directed Trump to file a brief with this court "regarding any remaining state law issues", for petitioners to file an appellee brief, and for Trump to have an opportunity to file a reply.

¶ 24    Trump filed a brief on April 11, 2024, in which he posits there are no pertinent remaining State law issues to be decided in this case.

¶ 25    Petitioners filed an appellee brief on April 26, 2024, in which they urge that we apply the public interest exception to the mootness doctrine in order to address interpretation of section 7-10 of the Election Code, insofar as the Board indicated no violation if a candidate did not *knowingly* make a false statement that he was "legally qualified" for office. See 10 ILCS 5/7-10 (West 2024). That is, petitioners urge we should clarify that a candidate who is not legally qualified is ineligible to appear on a ballot, regardless of whether he subjectively believed he was qualified when submitting a candidate statement to that effect pursuant to section 7-10.

¶ 26    This court directed the Board to file a response to petitioners' appellee brief. The Board submitted a brief, in which it argues that (1) the public interest exception to mootness does not apply and (2) regardless of mootness, this court's authority is limited to vacating the decisions of the Board and the circuit court. Trump did not file a reply brief.

¶ 27                                                  ANALYSIS

¶ 28    This is a procedurally and factually unique case. The instant appeal was filed by Trump from the circuit court's February 2024 order that ordered his removal from the ballot on the basis of Section 3. There is no dispute that the United States Supreme Court has rendered petitioner's

section 3 challenge moot, insofar as it held that "States have no power under the Constitution to enforce Section 3 with respect to federal offices, especially the Presidency." *Trump*, 601 U.S. at 110. That is, petitioners do not suggest that this court (or any state court or agency) can consider the merits of its objection to Trump's candidacy on Section 3 grounds. We also take notice that the petitioners' objection is moot for the additional reason that the March 2024 primary election (and November 2024 general election) have already occurred.

¶ 29    Nevertheless, petitioners urge that we should apply the public interest exception to the mootness doctrine to review an issue of state law—namely, whether a candidate's statement that he is "legally qualified" must be *knowingly* false to violate section 7-10 of the Election Code. Thus, petitioners ask us to address whether nomination papers that "includ[e] a statement that a candidate is qualified *** even though he is not, are nevertheless valid under section 5/7-10 of the Election Code as long as the candidate subjectively believed that he was qualified."

¶ 30    In its brief, the Board agrees with Trump that no state law issues remain in light of the United States Supreme Court's decision. Contrary to the petitioners, the Board avers that the public interest exception to mootness does *not* apply. More fundamentally, the Board asserts that we must vacate the circuit court's decision below because *Trump* established that neither the Board nor the circuit court had authority to address petitioners' Section 3 challenge.

¶ 31    For the following reasons, we agree with the Board that our precedent requires us to vacate the circuit court's order as well as the Board's decision, since the Board lacked authority to address the Section 3 objection.  Even if this were not the case, we would otherwise reject the petitioners' reliance on the public interest exception to mootness.

¶ 32    The U.S. Supreme Court's Decision Establishes That the Board Lacked Jurisdiction To Consider the Petitioners' Section 3 Challenge

¶ 33      As explained by our supreme court, the legislature "has vested the electoral board, and not the court, with original jurisdiction to hear" objections to nomination papers. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008).

¶ 34      Petitioners sought judicial review of the Board's decision to dismiss their objection pursuant to section 10-10.1 of the Election Code, "which governs objections to petitions for nomination filed under article 7 of the Election Code." *Goodman v. Ward*, 241 Ill. 2d 398, 405 (2011); 10 ILCS 5/10-10.1(a) (West 2024) ("a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held.").

¶ 35      "Such proceedings are in the nature of administrative review." *Goodman*, 241 Ill. 2d at 405. "[W]here a circuit court reviews an electoral board's decision pursuant to section 10-10.1 of the Election Code, we review the decision of the board, not the court." *Cinkus*, 228 Ill. 2d at 212. Accordingly, we address the decision of the Board before discussing the circuit court's decision.

¶ 36      Here, the Board decision at issue made two alternative conclusions in the course of dismissing petitioners' objection. On the merits, it found that petitioners had "not met their burden" to prove that Trump's statement of candidacy was "falsely sworn" in violation of Section 7-10 of the Election Code. Notably, the decision did not explicitly state that only a *knowingly* false statement would violate Section 7-10. However, the decision elsewhere recited that it adopted the recommendations of the Board's general counsel. As mentioned, the general counsel recommended the Board find no violation of Section 7-10 because Trump's statement that "he is 'legally qualified' for office is not knowingly false." Separately, the Board concluded "in the alternative," that it "lacks jurisdiction to perform the constitutional analysis necessary" to decide whether Trump was barred pursuant to Section 3.

¶ 37    As the Board's brief points out, the subsequent United States Supreme Court decision in *Trump* confirmed that state election boards do not have authority to decide the merits of any section 3 challenge to a candidate seeking federal office. In light of *Trump*, it is now clear that the Board did not have subject matter jurisdiction to entertain the objection.

¶ 38    "The term 'jurisdiction,' while not strictly applicable to an administrative body, may be employed to designate the authority of the administrative body to act." *Goral v. Dart*, 2020 IL 125085, ¶ 41; *Newkirk v. Bigard*, 109 Ill. 2d 28, 36 (1985).  In administrative law, "the term 'jurisdiction' has three aspects: (1) personal jurisdiction—the agency's authority over the parties and intervenors involved in the proceedings, (2) subject matter jurisdiction—the agency's power to hear and determine cases of the general class of cases to which the particular case belongs [citation], and (3) an agency's scope of authority under the statutes." (Internal quotation marks omitted.) *Goral*, 2020 IL 125085, ¶ 41.

¶ 39    Our supreme court has held that an agency order is void "if the agency lack[s] jurisdiction of the parties or of the subject matter or lack[s] the inherent power to make or enter the particular order involved." *Newkirk*, 109 Ill. 2d 28, 36 (citing *Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 112 (1976)).

¶ 40    Under these principles, the Board's decision must be considered void, in light of the United States Supreme Court's *Trump* decision.

¶ 41    We acknowledge (as petitioners' brief points out) that the *Trump* decision did not explicitly use the phrase "jurisdiction" in holding that the states lack authority to decide Section 3 challenges to persons seeking federal office. Yet we think that conclusion is inescapable from the unequivocal language of the decision that "States have no power under the Constitution to enforce Section 3 with respect to federal offices." *Trump*, 601 U.S. at 110. The Court emphasized that "nothing in

the Constitution delegates to the States any power to enforce Section 3 against federal officeholders and candidates." *Id.* at 111. The Court was unequivocal that "responsibility for enforcing Section 3 against federal officers and candidates rests with Congress and not the States." *Id*. at 117.

¶ 42    The United States Supreme Court's holding makes clear that no state has the power to address a challenge to federal candidacy based on Section 3. In light of this, petitioners cannot successfully maintain that the Board had any jurisdiction with respect to the specific challenge they raised. In turn, the Board's decision was void, insofar as it attempted to address the merits before reaching its "alternative" conclusion that it lacked jurisdiction. As the Board's brief recognizes, it "should not have addressed the merits of petitioner's Section 3 objection and to the extent its decision *** did so, that decision is void."

¶ 43    As the Board Decision Was Void, the Circuit Court Could Not Consider the Merits and Its Decision Must Also Be Vacated

¶ 44    The conclusion that the Board's decision was void guides our disposition of this appeal. Our precedent instructs that where an administrative decision is void, the circuit court lacks authority to consider the merits of an appeal from that decision. *Modrytzkji v. City of Chicago*, 2015 IL App (1st) 141874, ¶ 15 (where City of Chicago Department of Administrative Hearings (DOAH) lacked statutory authority to consider untimely appeal from determination of City's Commission on Animal Care and Control, the resulting DOAH decision was void and "the circuit court did not have the authority to consider the merits of plaintiff's appeal"). In such cases, "the circuit court [is] limited to reviewing the [agency] decision for whether the decision was void." *Id*.; see also *Austin Gardens, LLC*, v. *City of Chicago Dep't of Administrative Hearings*, 2018 IL App (1st) 163120, ¶ 31 (where DOAH entered void order, the circuit court should not have reached

the merits of complaint for administrative review but was limited to reviewing the DOAH decision for whether the decision was void).

¶ 45    If the circuit court has improperly rendered a decision on the merits of a void administrative decision, this court will vacate *both* the underlying administrative order, as well as the circuit court judgment. *Modrytzkji*, 2015 IL App (1st) 141874, ¶ 18; *Austin Gardens, LLC*, 2018 IL App (1st) 163120, ¶¶ 31-32.

¶ 46    In this case, the Board's decision was void in light of the United States Supreme Court's decision in *Trump*. Accordingly, the circuit court did not have authority to reach the merits but was limited to reviewing whether the Board's decision was void. In turn, consistent with our precedent, we will vacate the Board's decision as well as the circuit court's judgment.

¶ 47    With respect to remand, *Trump* makes clear that the Board had no authority to consider the petitioners' Section 3 objection. Thus, we remand to the circuit court to enter an order (1) dismissing the petitioners' petition for judicial review of the Board's decision and (2) directing the Board to dismiss the petitioners' objection pursuant to *Trump*.

¶ 48        The Appeal Is Otherwise Moot And the Public Interest Exception Does Not Apply

¶ 49    Based on the precedent discussed above, we are required to vacate the decision of the Board and the circuit court. In any event, we proceed to explain that we would otherwise decline petitioners' request to apply the public interest exception to mootness to decide whether a false statement of qualification must be *knowingly* false to keep a candidate off the ballot pursuant to section 7-10 of the Election Code.

¶ 50    "An appeal is moot if no actual controversy exists or when events have occurred that make it impossible for the reviewing court to render effectual relief." *Commonwealth Edison Co. v. Illinois Commerce Comm'n,* 2016 IL 118129, ¶ 10. "As a general rule, courts of review in Illinois

do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *Id*.

¶ 51   There is no dispute that this appeal is moot, in light of the United States Supreme Court's decision in *Trump* and the ensuing 2024 primary and general elections. However, the petitioners urge that under the public interest exception to the mootness doctrine, we should address whether a candidate's false statement that he is "qualified" must be *knowingly* false, in order to violate section 7-10 of the Election Code. See 10 ILCS 5/7-10 (West 2024) (requiring nomination papers to include a candidate's statement that he or she is "qualified for the office" sought.) In other words, petitioners ask us to hold that when a candidate falsely states that he is qualified, he is barred from appearing on the ballot, regardless of whether the candidate subjectively *believed* that he was legally qualified for office when he submitted the statement pursuant to section 7-10. Essentially, they ask that we refute the suggestion from the Board's general counsel that a candidate is not prohibited if he did not *knowingly* make a false statement of his qualification for office.

¶ 52   The prerequisites for invoking the public interest exception are not present here. "The public interest exception to the mootness doctrine applies only when (1) the question presented is of a public nature; (2) an authoritative determination of the question is desirable for the future guidance of public officers; and (3) the question is likely to recur." *Commonwealth Edison*, 2016 IL 118129, ¶ 12. This exception is "narrowly construed and requires a clear showing of each of its criteria." *Id*. ¶ 13.

¶ 53   Here, only the first of the three prerequisites is satisfied. We acknowledge that interpretation of 7-10 of the Election Code presents a question of a public nature. See *Goodman v.*

*Ward*, 241 Ill. 2d 398, 404-05 (2011) ("The instant appeal raises a question of election law, which, inherently, is a matter of public concern.")

¶ 54     However, we are not persuaded that there is a "clear showing" of the other two prerequisites to invoke the exception. Petitioners do not convince us that "an authoritative determination of the question is desirable for the future guidance of public officers." *Commonwealth Edison*, 2016 IL 118129, ¶12. "In deciding the need for an authoritative determination, this court looks to whether the law is in disarray or conflicting precedent exists." *Id*. ¶16.

¶ 55     Petitioners urge, in conclusory fashion, that "an authoritative resolution of the issue will be especially useful to guide public officers here." However, this court "does not review cases merely to set precedent or guide future litigation." (Internal quotation marks omitted.) *Id*. ¶ 15. Significantly, petitioners do not identify any actual debate or conflict in Illinois precedent as to whether a candidate who makes a false statement of qualification can nevertheless stay on the ballot on the basis that he did not subjectively *know* he was not qualified when he submitted the requisite candidate statement under section 7-10. Indeed, they do not identify any other Board decision or court case where this specific issue has ever been raised. This is not surprising; it seems apparent that if one is not in fact "qualified," that ends the issue of whether that person can stay on the ballot. See *Geer v. Kadera*, 173 Ill. 2d 398, 406 (1996) ("The purpose of [section 7-10] and similar provisions is to ensure an orderly procedure in which only the names of qualified persons are placed on the ballot.") Petitioners do not identify any instance where someone has admitted they were not actually qualified but sought to stay on the ballot because he did not subjectively *know* he was unqualified when he submitted his candidate statement.

¶ 56     Indeed, the candidate in this case did not even make this argument. Rather, it was the Board's general counsel who recommended that the Board could avoid delving into the Section 3

challenge by finding that Trump's statement was "not knowingly false." That suggestion was adopted by the Board's decision, which we now know was void pursuant to the United States Supreme Court decision in *Trump.*

¶ 57    In the future, perhaps more nuanced arguments can be made, on a case by case basis, about whether a candidate's mental state when making a false statement in nomination papers imapcts whether he or she is barred from the ballot. However, petitioners do not demonstrate a need for us to make such new precedent at this point in time. We also note that the Board—which is presumably well-positioned to assess whether it would benefit from court guidance on such matters—does not ask us to apply the public interest exception. For these reasons, we do not find a need for an authoritative resolution on the issue identified by the petitioners.

¶ 58    Similarly, with respect to the third requirement for the exception, we are not persuaded by petitioners that this specific question of election law is likely to recur. Again, petitioners cite no instance where this specific issue has been argued by any candidate. Moreover, it is obvious the factual circumstances that led to the petitioners' objection – including the attack on the Capitol on January 6, 2021 – are historically unique. In short, we reject petitioners' suggestion that the public interest exception to the mootness doctrine would apply.

¶ 59    Before concluding, we clarify that our discussion of mootness and the public interest exception is dicta. We reiterate our primary conclusion is that we are required to vacate the Board decision because it was void, which in turn requires us to vacate the circuit court decision.

¶ 60                                    CONCLUSION

¶ 61    For the foregoing reasons, we vacate both Board decision of January 30, 2024, as well as the February 28, 2024 judgment of the Circuit Court of Cook County. We remand to the circuit

court with directions to (1) dismiss the petition for judicial review and (2) direct the Board to dismiss the petitioners' objection.

¶ 62        Board decision vacated; circuit court judgment vacated and remanded with directions.